**Glenna Belle McEVOY, Appellee,**

v.

**The FIRST NATIONAL BANK AND TRUST COMPANY OF ENID, OKLAHOMA, Executor of the Estate of Betsy Mae Hutto, Appellant.**

**No. 53605.**

Court of Appeals of Oklahoma,
Division No. 1.

Nov. 25, 1980.

Rehearing Denied Jan. 20, 1981.

Released for Publication by Order of Court of Appeals Feb. 19, 1981.

Mitchell, DeClerck, Cox, Halstead, Lahman & Shaw by Larry D. Lahman, Enid, for appellee.

Field, North & Trojan by David G. Trojan, Enid, for appellant.

REYNOLDS, Presiding Judge:

In this case it is necessary to construe a non-participating term mineral conveyance to determine whether the interest created thereby terminated at the end of the primary term, or whether such interest was extended past the primary term.

Glenna Belle McEvoy (Appellee) brought this action against the State of Oklahoma *ex rel.* Oklahoma Tax Commission and the unknown successors of R. G. Welker, deceased, and Elma Welker, deceased, to quiet title to an undivided ¼ mineral interest in the NW/4 of Section 36, Township 22 North, Range 6 West, of the Indian Meridian, Garfield County, Oklahoma. The State *ex rel.* Oklahoma Tax Commission disclaimed any lien or interest in the property and was discharged by the trial court. The First National Bank and Trust Company of Enid (Appellant), the duly appointed and qualified executor of Betsy Mae Hutto, formerly Schaefer, deceased, intervened.

The parties stipulated to the following facts: J. E. Schaefer and Sophia Schaefer executed a non-participating term mineral conveyance in favor of R. G. Welker and Elma S. Welker on October 26, 1956. This deed conveyed an undivided ¼ interest in and to all of the oil royalty, gas royalty and royalty in casinghead gas, gasoline, and royalty in other minerals in and under the previously described property. R. G. Welker and Elma S. Welker died intestate in August 10, 1965, and October 28, 1971, respectively. Appellee was the sole heir of R. G. and Elma Welker.

The October 26, 1956, instrument conveyed the undivided ¼ interest for a period described as follows:

"This grant shall run, and the rights, titles and privileges hereby granted shall extend to grantees herein, and to the heirs, administrators, executors and as-

signs of the surviving grantee for a period of twenty (20) years from October 10, 1956, and as long thereafter as oil, gas, or other minerals, or either of them, is produced or mined from the lands described herein, in paying or commercial quantities. If, at the expiration of said 20 years from October 10, 1956, gas, or other minerals is not being produced or mined from said land or any portion thereof in paying or commercial quantities, this contract shall be null and void, and the grantees' rights hereunder shall terminate."

Drilling operations were commenced on the subject property on March 3, 1976. Drilling was finished on March 24, 1976. The date of first production was May 12, 1976. The well was completed July 10, 1976. At this time the well was capable of producing oil and gas in paying or commercial quantities; however, neither was marketed at this time. The primary term ended October 10, 1976. Gas was first sold from the well on January 18, 1977. Oil was first sold from the well on February 22, 1977. From and after those dates oil and gas has been marketed in paying or commercial quantities.

Appellant asserted that Appellee's interest in the property had terminated on October 10, 1976, since oil, gas, or other minerals or either of them, was not being produced or mined from the property in paying or commercial quantities. Appellee contended that the term interest was not terminated because a well capable of producing oil and gas in paying or commercial quantities was completed within the primary term and that it subsequently did produce those minerals in paying quantities.

The trial court quieted title to the undivided ¼ term mineral interest in Appellee, holding that the term did not terminate because the time required to obtain a market for the oil and gas produced by the well was reasonable. Appellant has perfected this appeal.

The issue presented is whether the interest created by the October 26, 1956, non-participating term mineral interest convey-ance is perpetuated past its primary term where oil and/or gas is discovered in paying or commercial quantities during the primary term, but where the acquisition of a market for such production did not occur until after the expiration of the primary term.

 The duration of a terminable interest is dependent upon the construction of the instrument creating it. In the interpretation of any conveyance, the question is one of intention of the parties. *Colonial Royalties Co. v. Keener*, Okl., 266 P.2d 467 (1953). It is the intent of the parties that controls. *Cridland v. Franklin*, Okl., 191 Okl. 650, 132 P.2d 323 (1942). This intent is to be deduced from the four corners of the instrument. *Postier v. Postier*, Okl., 296 P.2d 138 (1956).

A division of authority exists on the extension of the term interest where there has been discovery of oil and gas in the primary term but the acquisition of a market does not occur until after the term. Texas has held in such circumstances that the term had terminated. *Stephenson v. Vineyard*, Tex.Civ.App., 564 S.W.2d 424 (1978); *Holchak v. Clark*, Tex.Civ.App., 284 S.W.2d 399 (1955); but *see Bain v. Strance*, Tex.Civ. App., 256 S.W.2d 208 (1953). The United States Court of Appeals for the 10th Circuit has held in *Home Royalty Assn. Inc. v. Stone*, 199 F.2d 650 (10th Cir. 1952), that under Kansas law marketing is required within the primary term to extend the term interest beyond such term. An opposite result, extending the term mineral interest past the primary term, has been reached by two courts, one applying Oklahoma law, *Bain v. Strance, supra*, and *Panhandle Eastern Pipeline Co. v. Isaccson*, 255 F.2d 669 (10th Cir. 1958), by the utilization of the rule applicable to oil and gas lease cases.

 Appellee, though failing to cite *Bain* or *Panhandle*, urges application of the "completion" lease rule to non-participating term mineral interest conveyances. It is clear in Oklahoma that where a well has been completed just prior to the expiration of the primary term of a "completion" oil

and gas lease, the lessee, by necessary implication, has a reasonable time in which to obtain a market for the production even if the primary term has expired during the interim. *State v. Carter Oil Company of West Virginia*, Okl., 336 P.2d 1086 (1958).

The Oklahoma Supreme Court has long recognized that oil and gas lease cases "constitute little authority" in terminable interest cases. *Jath Oil Co. v. Branch*, Okl., 490 P.2d 1086, 1091 (1971); *Beatty v. Baxter*, 208 Okl. 686, 258 P.2d 626 (1953). The following discussion on the reasoning supporting such rule appears at 1, Kuntz, *The Law of Oil and Gas*, § 15.8, p. 356–7:

"The view taken by the Oklahoma court is supported by the reasoning that it should be recognized that the situation involving leasing is not the same as the situation present in the granting or reserving of terminable interests in the minerals. In the case of the lease, development by the lessee is contemplated, and it is assumed that the lessee will have it within his power to attempt to extend the lease by production. In the case of the terminable interest, however, the parties do not contemplate activity by the grantee to make the minerals productive for the mutual benefit of the grantee and the reversioner. The owner of a terminable royalty interest has no right of ingress and egress, and although the owner of a terminable mineral interest enjoys such right to the extent that it is not impaired by an outstanding oil and gas lease, such right is for his own benefit. The duration of the fixed term of the terminable interest may be fixed by caprice, by the anticipated duration of a current wave of speculation, or by references to purposes other than that of stimulating operations. While the lessor contemplates operations by the lessee for the mutual benefit of the lessor and lessee, the grantor of a terminable interest contemplates no such thing. The parties have picked an event which is not related to their mutual interests except that it defines when one interest terminates and the other vests in present enjoyment.

Although the duration of terminable interest may be expressed in terms of production from the premises, the parties were most likely thinking in terms of enjoyment of benefits. It is most likely intended in such instances that if the interest proves to be productive within the fixed term the interest is to endure as long as it yields tangible benefits in the form of royalty payments or payments in lieu of royalty, regardless of how the payments are computed. The fixed term describes the period during which the interest is held speculatively. When the speculation proves fruitful, the interest is to endure during the enjoyment of the fruits. If speculation does not prove to be fruitful, then the owner of the interest is to be deprived of ownership so that speculation and development in the distant future will not be impaired."

■ In light of this authority we decline to utilize the rule applicable to "completion" leases to non-participating term mineral interest conveyances.

The issue herein presented is discussed in § 334.4 of *2 H. Williams and C. Meyers Oil and Gas Leases*. The summary thereto concludes:

"With only two defeasible term interest cases [*Bain* and *Panhandle*] (one probably overruled on the point) and a minority of oil and gas lease cases to support the proposition that an interest is perpetuated by discovery of oil or gas in the primary term followed by diligent efforts which result in actual production and marketing after the primary term, we conclude that most courts will terminate the defeasible interest under such circumstances. This position seems reasonable, despite the seeming hardship on the term owner."

The plain meaning of the words utilized by the parties in the October 26, 1956, conveyance is inescapable. On October 10, 1976, oil and gas was not being produced in paying or commercial quantities, and Appellee had received no tangible benefits from the activity. A well *capable* of pro-

ducing in paying or commercial quantities is not the same as a well *producing* in such quantities. Accidents and unforeseen occurrences could render such well incapable of producing in paying or commercial quantities. Had the parties desired a provision which would allow perpetuation of the term by acquisition of a market within a reasonable time after the expiration of the primary term, they would have so provided.

We conclude that the term mineral interest herein presented automatically terminated according to the unambiguous terms of the conveyance on October 10, 1976, when oil, gas, or other minerals, or either of them, were not being produced in paying or commercial quantities. The judgment of the trial court is reversed and remanded with directions to enter judgment for Appellant.

**REVERSED AND REMANDED WITH DIRECTIONS.**

BOX, J., concurs.