George M. FRANSEN and Yvonne M. Fransen, husband and wife, Appellants,

v.

Esther ECKHARDT, Robert L. Eckhardt, Dorothy R. Bashor, LaDonna Swanson, Arvene Eckhardt, and Dolores Smith, Appellees.

No. 62580.

Supreme Court of Oklahoma.

April 16, 1985.

Graft & Cabaniss, Clinton, for appellants.

Allan DeVore, Oklahoma City, and Doug Burns, Woodward, for appellees.

KAUGER, Justice.

This action is pending on appeal before the United States Court of Appeals for the 10th Circuit. The following question was certified by that court pursuant to the Uniform Certification of Questions of Law Act, 20 O.S. 1981 §§ 1601–1613:

> Does the completion and testing of a gas well to the point that it is capable of producing gas in paying quantities, contracting for the sale of the gas through a gas purchase contract, and commencing construction to connect the well to a pipeline satisfy the extension provision of a term mineral interest reserved in a deed providing that the primary term of the reservation be extended "in the event that ... gas and other minerals ... are being produced in paying quantities ... at the time of the termination of the period above mentioned?"

This Court has answered the question as follows:

> Under the terms of the warranty deed under consideration, a term mineral interest requires actual marketing for the interest to be extended beyond the primary term. The requirement for production in paying quantities is not satisfied until the gas is reduced to possession and the parties receive financial benefits from the production.

On January 22, 1952, J.E. and Esther Eckhardt, the grantors, conveyed lands in Custer County, Oklahoma by warranty deed to George and Yvonne Fransen. The grantors reserved a term interest by the following language:

> "There is, however, EXCEPTED and RESERVED unto the Grantor, his heirs, executors, administrators, and assigns, an undivided one-fourth (¼) interest in the oil, gas and other minerals in and under and that may be produced from the above described land for a period of thirty (30) years from the date of this deed, and in the event that oil, gas, and other minerals, or any of them, are being produced from said land in paying quantities at the time of the termination of the period above mentioned, then this reservation shall continue and be in full force and effect as long as such production continues; ..."

On April 18, 1979, the Eckhardts leased the mineral interest to O.N.G. Exploration, Inc. Sometime thereafter, O.N.G. entered into an operating agreement with the Harper Oil Company by which Harper agreed to operate the working interest of the property owners. Harper began drilling operations in January of 1981, and completed the well in September. Tests were conducted on September 17, and the well was determined to be capable of producing gas and gas condensate in paying quantities, and both flowed from the well for approximately six hours. The gas was flared, the condensate was recovered at the rate of one and a half barrels per hour, and nine barrels of condensate were stored. The well was then shut-in to await connection to a gas pipeline. Harper negotiated a gas purchase contract with Delhi Gas Pipeline Corporation on December 9, 1981, and Delhi began construction of a pipeline to the well. The pipeline was completed on April 16, 1982, and gas was produced into the pipeline on May 5, 1982. Gas and gas conden-

sate have been sold in paying quantities since that time.

The Fransens filed an action in the district court of Custer County to quiet title and to cancel the 30-year mineral interest. The Eckhardts removed the case to the United States District Court based on diversity jurisdiction. Each party filed a motion for summary judgment. The United States District Court for the Western District denied the Fransens' motion and granted the Eckhardts' motion. The Court determined that the discovery and completion of a well which had produced, and was capable of producing, hydrocarbons in paying quantities was sufficient to extend the term mineral interest. The Fransens appealed to the 10th Circuit.

**UNDER THE TERMS OF THE WARRANTY DEED UNDER CONSIDERATION, THE WELL MUST BE COMPLETED, CONNECTED TO A GAS PIPELINE, AND ECONOMIC BENEFIT MUST BE RECEIVED FROM THE SALE OF THE OIL AND GAS. A DIFFERENT RESULT WOULD BE REACHED IF THE INSTRUMENT RESERVING THE INTEREST WERE AN OIL AND GAS LEASE.**

The Fransens contend that more is required than discovery and completion of a well to extend the lease mineral interest; and that the language in the deed creating and reserving the term mineral interest requires production, marketing, and economic benefit to the parties. We agree.

The critical date is January 22, 1982. On that date, if gas were not being produced in paying quantities, the deed reservation ended, and all rights in the land reverted to the Fransens. The parties agree that prior to January 22, 1982, the well was completed

and found capable of producing gas in paying quantities, and that gas or gas condensate was not actually sold in paying quantities until three to four months after the deed's termination date.

The 10th Circuit certified the question of whether the term is extended because there are no controlling Oklahoma precedents. The two decisions construing "production" under Oklahoma law, *Panhandle Eastern Pipeline Co. v. Isaacson*, 255 F.2d 669 (10th Cir.1958) and *McEvoy v. First National Bank and Trust Company of Enid*, 624 P.2d 559 (Okla.App.1980) have reached different results.

In *Isaacson*, the deed contained a reservation clause similar to the one involved in this case. The primary term reserved expired on August 13, 1956. In the interval from December, 1953 to February, 1954, a well was drilled on part of the land. The well was tested in March, 1954, and gas flowed at the rate of 2,300,000 cubic feet per day. The well was equipped with casing, tubing, a separater, well head fittings, and measuring tanks. A second test was conducted in May, 1956, and a gas purchase contract was executed with Colorado Interstate Pipeline Company. At the time of the lawsuit, the well had not been connected to a pipeline and no royalties had been paid. The 10th Circuit Court of Appeals determined that the reservation clause in the deed contained a "thereafter" clause resembling similar clauses found in oil and gas leases. The Court, while recognizing that there are dissimilarities between a deed and an oil and gas lease, and acknowledging that distinct rules of construction apply to each of the two instruments,[1] defined "production", regardless of whether it appeared in a deed or in a lease, as not requiring marketing.[2]

1. In *Beatty v. Baxter*, 208 Okla. 686, 258 P.2d 626, 628 (1953) the Court said: An oil and gas lease is governed by different rules of construction from those applicable to other contracts. In *Jath Oil Co. v. Durbin Branch*, 490 P.2d 1086, 1091 (Okla.1971) the Court said that: "... *oil and gas lease cases could not be applied to term mineral interests because, in reference to provisions other than the granting clause, essentially*

*different obligations were involved...."* *(Emphasis added)*

2. The court followed the holding in *McVicker v. Horn, Robinson and Nathan*, 322 P.2d 410, 71 A.L.R.2d 1211 (1958) which provided marketing is not necessary for production in an oil and gas lease.

The opposite conclusion was reached in *McEvoy v. First National Bank and Trust Company,* 624 P.2d 559 (Okla.App.1981). This case concerned a non-participating term mineral conveyance executed on October 26, 1956, with the primary term expiring on October 10, 1976. The deed conveyed an undivided 1/4 interest in the royalty in any minerals under the described property.[3] Drilling operations began on March 3, 1976, and were finished on July 10. At this time, the well was capable of producing oil and gas in paying quantities, but neither was being marketed by October 10, 1976. Gas was first sold from the well in January of 1977—oil in February of 1977, and since that time, oil and gas were marketed in paying quantities. The issue before the *McEvoy* court was whether the interest was perpetuated past its primary term when oil or gas is discovered in paying or commercial quantities in the primary term, but a market for the production is not developed until after the expiration of the primary term.

The Court of Appeals did not accept *Isaacson's* assumption that the definition of "production" is the same for both deeds and leases. The court followed Kuntz, *The Law of Oil and Gas,* § 15.8 (1962), and refused to apply to non-participating term mineral interest conveyances the rule applicable to completion leases. The court held that a well *capable* of producing in paying quantities is not the same as a well producing in *actual* paying quantities. It found that the term mineral interest terminated on October 10, 1976, when oil, gas, or other minerals were not produced in paying quantities.

The construction of the reservation turns on the question, what is production in paying quantities? Obviously, there is a split in authority concerning whether production without marketing will extend the term interest.[4]

[redacted] The majority of the cases in Texas require marketing to extend the primary term.[5] These cases are not applicable because they involve royalty interests,[6] and they are distinguishable from reservations in warranty deeds, which are a mineral interests.[7] The inherent difference between a royalty interest and a mineral interest in land, is that the owner of the royalty interest receives nothing unless gainful production is acquired, while a mineral interest owner is entitled to lease his/her share and receive renewal rentals and any other benefits available under the lease.[8]

The Kansas courts, however, have dealt explicitly with reservations of oil and gas interests in warranty deeds. In *Dewell v. Federal Land Bank of Wichita,* 191 Kan. 258, 380 P.2d 379 (1963), the Court held that the reservation in a warranty deed which reserved an undivided 1/2 interest in the minerals for twenty years, and so long

3. The deed provided:
"This grant shall run, and the rights, titles, and privileges hereby granted shall extend to grantee herein, and to the heirs, administrators, executors and assigns of the surviving grantee for a period of twenty (20) years from October 10, 1956, and as long thereafter as oil, gas, or other minerals, or either of them, is produced or mined from the lands described herein, in paying or commercial quantities. If, at the expiration of said 20 years from October 10, 1956, gas, or other minerals is not being produced or mined from said land or any portion thereof in paying or commercial quantities, this contract shall be null and void, and the grantee's rights hereunder shall terminate."

4. See 2 Williams and Meyers, "Oil & Gas Law," p. 145–46, § 334.4 (1984).

5. However, one case reached the contrary result. The court found in *Bain v. Strance,* 256 S.W.2d 208 (Tex.Civ.App.1953) that even if no paying production was accomplished by the expiration of the primary term, if oil or gas was discovered prior to that time, the term would not terminate until a reasonable time had elapsed for marketing. The Texas Supreme Court has refused to follow this holding. *Sellers v. Breidenbach,* 300 S.W.2d 178–79 (Tex.Civ.App. 1957).

6. *Stephenson v. Vineyard,* 564 S.W.2d 424, 426 (Tex.Civ.App.1978); *Sellers v. Breidenbach,* id.

7. *Jolly v. Wilson,* 478 P.2d 886, 888 (Okla.1970).

8. *Surety Royalty Co. v. Sullivan,* 275 P.2d 259, 263 (Okla.1954).

thereafter as oil and gas or other minerals are produced, created a determinable fee in the minerals. The Court found that the deed reservation, and an oil and gas lease executed at different times and by different parties, could not be construed together. It further held that a shut-in royalty clause in a lease does not extend the interest of the holders of the mineral rights under a reservation because shut-in royalty payments are not equivalent to production; and that the reservation was not extended beyond the primary term by the payment of shut-in royalties. In this case, no shut-in royalty payments were paid to the Fransens, nor had any benefits been received by them.

In *Home Royalty Association v. Stone,* 199 F.2d 650 (10th Cir.1952), the plaintiffs owned all the surface rights and one-half of the minerals. The defendant owned one-half of the minerals. The habendum clause in the mineral conveyance was very similar to the one in the present action. It provided "to have and to hold until the said grantee for the period of twenty-one (21) years from the date, and as much longer thereafter as oil, gas, or other minerals are produced". Gas was discovered and tested during the primary term. Actual marketing did not begin until after the primary term had ended. The court, applying the law of Kansas, held that a conveyance which contains only a habendum clause to set the termination point of the primary term for the production of oil or gas will extinguish the rights of the grantee unless oil or gas are discovered and marketed prior to the expiration of such term.

■ This Court has determined that the grantee under a terminable interest stands in a dissimilar position from that of the lessee under a lease; and we previously have recognized that oil and gas lease cases constitute slight authority when addressed to a case involving a terminable interest.[9] This view is supported by acknowledging that an oil and gas lease is not the same as a grant or reservation of terminable interests in the minerals. Under a lease, development by the lessee is intended, and it is understood that the lessee will have the power to try to extend the lease by production. In a terminable interest, the parties do not contemplate activity by the grantee to produce the minerals for the mutual benefit of the grantee and the reversioner. The owner of the terminable mineral interest has the right of ingress and egress but this right is for his/her own benefit. The continuation of the fixed term of the terminable interest may be set by whim, by the anticipated period of the current boom, or by references to purposes other than that of stimulating discovery of oil and gas. The lessor considers operations by the lessee for the mutual benefit of the lessor and lessee. The grantor of a terminable interest does not think of any benefit but his/her own.[10]

---

**9.** *Jath Oil Co. v. Durbin Branch,* note 1, supra.

**10.** Kuntz, *The Law of Oil and Gas,* p. 356–57 § 15.8, (1962):

"The view taken by the Oklahoma court is supported by the reasoning that it should be recognized that the situation involving leasing is not the same as the situation present in the granting or reserving of terminable interests in the minerals. In the case of the lease, development by the lessee is contemplated, and it is assumed that the lessee will have it within his power to attempt to extend the lease by production. In the case of the terminable interest, however, the parties do not contemplate activity by the grantee to make the minerals productive for the mutual benefit of the grantee and the reversioner. The owner of a terminable royalty interest has no right of ingress and egress, and although the owner of a terminable mineral interest enjoys such right to the extent that it is not impaired by an outstanding oil and gas lease, such right is for his own benefit. The duration of the fixed term of the terminable interest may be fixed by caprice, by the anticipated duration of a current wave of speculation, or by references to purposes other than that of stimulating operations. While the lessor contemplates operations by the lessee for the mutual benefit of the lessor and lessee, the grantor of a terminable interest contemplates no such thing. The parties have picked an event which is not related to their mutual interests except that it defines when one interest terminates and the other vests in present enjoyment. Although the duration of terminable interest may be expressed in terms of production from the premises, the parties were most likely thinking in terms of enjoyment of bene-

■ The purpose of a term interest is to prevent title complication by unifying the title from time to time. The advantage of title unification, in the absence of production or in the presence of exhaustion of oil and gas reserves, is important for several reasons. There is no way to determine with certainty whether the resources are exhausted. Other investors who believe that other mineral deposits may be present may want to purchase the mineral interest. Because prospective purchasers of surface interests frequently want the mineral rights included, outstanding mineral interests place practical hindrances, on and depress the price of, subsequent sales. The mineral owner owes certain duties to the perpetual royalty owner. Ultimate title unification provides certainty and extinguishes these problem obligations.[11]

■ The rules of construction require that the intention of the parties, especially the intention of the grantors be discerned by examination of the entire instrument.[12] The warranty deed states "this reservation shall continue and be in full force and effect as long as such production continues". The parties have selected an occur-

rence which is disassociated from their mutual interest except prescribing when one interest concludes and when the other vests in present enjoyment. While the continuation of a terminal interest may be formulated in terms of production from the premises, the parties probably thought in terms of enjoyment of benefits. A perusal of the four corners of the warranty deed, reflects that the grantors intent was to protect their interest in an oil and gas lease which had been executed on September 5, 1957.[13] The apparent general intention was that if speculation resulted in the production of oil and gas, the interest would continue, and if the lease were unproved, the Eckhardts would be divested of ownership so that future development would not be prejudiced.[14]

■ The rules regarding production in paying quantities applicable to oil and gas leases do not apply to the reservation contained in the warranty deed.[15] We adopt the Kuntz rationale expressed in *McEvoy*,[16] and find that in this case, production means actual enjoyment of tangible economic benefits which result from marketing.

QUESTION ANSWERED.

fits. It is most likely intended in such instances that if the interest proves to be productive within the fixed term the interest is to endure as long as it yields tangible benefits in the form of royalty payments or payments in lieu of royalty, regardless of how the payments are computed. The fixed term describes the period during which the interest is held speculatively. When the speculation proves fruitful, the interest is to endure during the enjoyment of the fruits. If speculation does not prove to be fruitful, then the owner of the interest is to be deprived of ownership so that speculation and development in the distant future will not be impaired."

11. Bliss, "Production Under Term-Royalty and Term-Mineral Deeds," 36 Tex.L.Rev. 486–87 (1958).

12. *Iskian v. Consolidated Gas Utilities Corp.,* 207 Okl. 615, 251 P.2d 1073, 1076 (1952); *Owens v. Day,* 207 Okl. 341, 249 P.2d 710, 712 (1952); *Cridland v. Franklin,* 191 Okl. 650, 132 P.2d 323, 325 (1942).

13. The warranty deed reflects:
"Oil and Gas lease executed on Sept. 5th, 1951, for a term of 10 years covering the NE¼ Sec.

33, 13–17 WIM and recorded in Vol. 15, Pages 223–4 of the Oil and Gas Records of Custer County."

14. See *McEvoy v. First Nat. Bk. & Trust Co. of Enid,* 624 P.2d 559, 562 (Okla.App.1980); see also Kuntz, *The Law of Oil & Gas,* note 10, supra.

15. This result should provide a caveat to drafters of term mineral instruments. The term mineral owner can be protected by employing a clause utilized by modern forms providing a grant for x years, and as long thereafter, as any exploration, development in production, profitable or unprofitable, is in progress on the property without cessation for a longer period than one year. Bliss, "Production Under Term-Royalty and Term-Mineral Deeds," note 11, supra.

16. This rationale is also supported in Hemingway, *The Law of Oil and Gas* p. 295 (2nd Ed. 1983); Bliss, "Production Under Term-Royalty and Term-Mineral Deeds," 36 Tex.L.Rev. 486–87 (1958); Albright, "Oil and Gas: Defeasible Term Interests—The Production Requirement," 29 Okla.L.Rev. 751–52 (1976).

DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE, WILSON and SUMMERS, JJ., concur.

SIMMS, C.J., and OPALA, J., dissent.