Ralph E. GREENFIELD and Alvina M. Greenfield, Plaintiffs and Appellants

v.

W.F. THILL, Trustee of the Wilhelmina Schmid Estate Trust, W.F. Thill a/k/a William F. Thill, individually, Karen Cheek, Candace Williams, Mabelle A. Caroll, Anne M. Cheek, and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the Complaint, Defendants and Appellees.

Civ. No. 940058.

Supreme Court of North Dakota.

Sept. 7, 1994.

Jeffrey J. Peterson (argued), of Peterson Law Office, Bowbells, and Michel W. Stefonowicz (appearance), Crosby, for plaintiffs and appellants.

Robert A. Wheeler (argued), of McGee, Hankla, Backes & Wheeler, Ltd., Minot, for defendants and appellees.

MESCHKE, Justice.

Ralph and Alvina Greenfield appeal from a summary judgment dismissing their action to quiet title to certain mineral rights. We reverse and remand for further proceedings.

In 1959, the Wilhelmina Schmid Estate Trust deeded certain property in Burke County to the Greenfields, reserving "all oil, gas and minerals ... including ... the right ... to enter the above described lands and to use so much of the surface as may be reasonable for the purpose of extracting the oil, gas, and mineral thereon and thereunder, at any time within the period of twenty years from the date of this grant, or so long as oil or gas or either of them is found in paying quantities upon the above grant." In 1962, the Trust leased the oil and gas rights to Pan American Petroleum Corporation. In 1964, the Trust deeded its interest in the oil, gas, and minerals to Mabelle Carroll and Anne Cheek. This deed stated the interest was "for a period of twenty (20) years from June 23, 1959, and so long thereafter as oil or gas or either of them is found in paying quantities, then to Ralph B. Greenfield and Alvina M. Greenfield, as Joint Tenants."

Two producing oil and gas wells, the Carroll–Grandall # 14–24 and the Carroll–Miller # 1, were drilled on the land. In 1969, these wells became part of the Foothills Unit. MCOR Oil and Gas Corporation subsequently acquired the lease from Pan American and became the operator of the Foothills Unit. The Foothills Unit was voluntarily terminated in 1984. MCOR was allowed to commingle production from producing wells within the Unit until December 1, 1986, but had to either plug the wells or transfer them to a working interest owner by that date. MCOR discontinued production from the Carroll–Grandall # 14–24 and the Carroll–Miller # 1 in November 1986. Although MCOR had the right to retain leases on producing wells, and did in fact retain some of its leases within the Unit, MCOR released its lease covering the Carroll–Grandall # 14–24 and the Carroll–Miller # 1 on December 1, 1986. It did not, however, plug the wells.

MCOR sold the on-site equipment at the two wells to Ampolex (Texas), Inc. Ampolex obtained new leases from both the Green-

fields and the Carroll–Cheek interests, and placed the Carroll–Grandall # 14–24 back into production in July 1987, and the Carroll–Miller # 1 in November 1987. While the Carroll–Grandall # 14–24 was shut down in May 1989, the Carroll–Miller # 1 was still producing when the judgment was entered in this case. All mineral owners' royalty from Ampolex production has been accrued in suspense pending resolution of this litigation.

The Greenfields sued the Carroll–Cheek defendants (defendants) to quiet title to the disputed oil, gas, and minerals, asserting that the cessation of production terminated the defeasible-term interest reserved in the 1959 deed. The Carroll–Cheek defendants answered, claiming that any cessation of production was temporary and did not terminate their defeasible-term interests. On cross-motions for summary judgment, the trial court found that the cessation of production was temporary and did not terminate the defeasible-term interests. Summary judgment was entered dismissing the Greenfields' complaint.

■ We face a question of first impression in this state: When there has been production in the primary term carrying over into the secondary term, when will a cessation of production terminate the defeasible-term interest in oil and gas created by a habendum clause in a deed?[1]

We have addressed the effect of a cessation of production during the secondary term of an oil and gas lease containing a similar habendum clause. We held that, where the lease has been extended beyond its primary term by production, a temporary cessation of production will not automatically terminate the lease. *Sorum v. Schwartz*, 344 N.W.2d 73, 76 (N.D.1984); *Feland v. Placid Oil Co.*, 171 N.W.2d 829, 833 (N.D.1969). *See also Murphy v. Amoco Production Co.*, 590 F.Supp. 455, 459 (D.N.D.1984). This is the universally accepted rule for leases. *See* Annot., *Rights of Parties to Oil and Gas Lease or Royalty Deed after Expiration of Fixed Term Where Production Temporarily Ceases*, 100 A.L.R.2d 885, § 3 (1965), and cases cited therein. We explained the rule in *Feland*, 171 N.W.2d at 836:

> The lessors have introduced no evidence to demonstrate that the operator did not exercise reasonable diligence, but rely on the fact that the cessation of production, of itself, was sufficient to automatically terminate the lease. It has been said that since there are various justifiable causes for the slowing up, or temporary cessation, of production, it would be harsh and inequitable to automatically terminate a lease in all cases of cessation.

In *Sorum*, 344 N.W.2d at 76, we explained that equity requires, in the ordinary case, the operator be allowed a reasonable time to bring the lease back into production.

We have not yet addressed whether the temporary cessation rule for leases also applies to defeasible-term interests created by a habendum clause in a deed. Apparently, this question has been addressed by courts in only three states: Texas, Kansas, and Oklahoma.

The defendants ask us to follow the Texas and Kansas cases that apply the lease rule to defeasible-term interests, and to hold that a temporary cessation of production does not automatically terminate the defeasible-term interest. *See Scott v. Union Producing Co.*, 267 F.2d 469, 470 (5th Cir.1959) (applying Texas law); *Wagner v. Sunray Mid–Continent Oil Co.*, 182 Kan. 81, 318 P.2d 1039, 1045–1046 (1957); *Wilson v. Holm*, 164 Kan. 229, 188 P.2d 899, 906 (1948); *Kelwood Farms, Inc. v. Ritchie*, 1 Kan.App.2d 472, 571 P.2d 338, 342 (1977); *Amoco Production Co. v. Braslau*, 561 S.W.2d 805, 808–809 (Tex.1978); *Midwest Oil Corp. v. Winsauer*, 159 Tex. 560, 323 S.W.2d 944, 946 (1959); *De Benavides v. Warren*, 674 S.W.2d 353, 357 (Tex.Ct.App.1984); *Campbell v. Seaman*, 427 S.W.2d 705, 707–708 (Tex.Civ.App.1968); *Stuart v. Pundt*, 338 S.W.2d 167, 168 (Tex.

---

**1.** Although the habendum clause in this case states that the interest continues for so long as oil or gas "is found in paying quantities," the parties agree that it should be construed as "produced in paying quantities." It is generally recognized that "found in paying quantities" is synonymous with "produced in paying quantities." *See* 2 Williams & Meyers, Oil and Gas Law § 333 (1993); *Reese Enterprises, Inc. v. Lawson*, 220 Kan. 300, 553 P.2d 885, 896 (1976), and cases cited therein; *Owens v. Day*, 207 Okla. 341, 249 P.2d 710, 712 (1952).

Civ.App.1960). *See also* 1A Summers, Oil and Gas § 136 (1954). The rationale for, and operation of, the rule is explained in *Wilson v. Holm*, 188 P.2d at 907:

Obviously, since production under a lease depends in the first instance upon action or inaction on the part of the lessee and since the ultimate test as to whether an estate created by a deed has terminated depends entirely upon its own provisions, it must follow that the parties to a mineral deed, providing the estate conveyed to the grantees shall continue so long as oil is produced in paying quantities, do not contemplate that failure of a lessee to produce oil in paying quantities works a defeasance ipso facto. To hold otherwise would mean that failure of the lessee to so produce because of neglect, poor judgment, fraud, connivance with the owners of other mineral interests, voluntary abandonment of the lease, or any unjustifiable reason over which the grantees had no control, would have that result. That, however, does not mean that owners of mineral interests can sit idly by and do nothing when the lessee ceases to operate or production stops for any other reason. Neither does it mean, as appellants contend, that any cessation which is resumed at some future date cannot be deemed permanent but must be construed as temporary for that construction would result in a nullification of the defeasance clause itself. We believe proper construction of such an instrument requires the conclusion that if for any reason there is a cessation of production of oil in paying quantities on the land covered by its terms the owners of the minerals in place are required to move promptly and by their efforts actually establish that such cessation, regardless of its cause, is temporary, not permanent. In the event of their failure to do so, it is our view production as contemplated by the parties is to be regarded as having ceased, their conveyance terminates and any estate therefore held by them under and by virtue of its terms reverts to the grantors.

The Greenfields, on the other hand, urge us to adopt the Oklahoma rule that, they assert, requires termination of a defeasible-term interest upon *any* cessation of production in the secondary term. However, the law on this question in Oklahoma appears far from settled.

The seminal Oklahoma case is *Beatty v. Baxter*, 208 Okla. 686, 258 P.2d 626 (1953). In *Beatty*, the court specifically held that the cases interpreting habendum clauses in oil and gas leases did not govern the respective rights of the grantor and grantee of a royalty interest:

Whether or not a contract, which is effective "as long * * * as oil or gas is produced," has expired depends upon the surrounding facts in each case. Plaintiffs cite and rely upon a number of decisions of this court dealing with the interpretation of the quoted phrase but all of them are those wherein the phrase was a provision in an oil and gas lease. No case has been cited wherein the phrase was a provision in a mineral or royalty deed. Nor do we find one upon independent investigation. The cited cases constitute little authority which is applicable to the case at bar. An oil and gas lease is governed by different rules of construction from those applicable to other contracts, being construed most strongly against the lessee and in favor of the lessor. . . .

The defendants herein, being grantees of royalty interests, stand in a materially different position from that of lessees. Not only is there no duty upon them to effect production, but their right to do so is doubtful. That duty rests upon the lessee and upon the success of the lessee's action in obtaining and maintaining production depends the extent of the term of the defendants' estates.

*Beatty*, 258 P.2d at 628–629. However, having concluded that the lease cases did not control, the court nevertheless applied a temporary cessation rule, holding that a temporary cessation for rehabilitation of the well did not terminate the defeasible royalty interest. *Beatty* was followed in *Postier v. Postier*, 296 P.2d 138, 140 (Okla.1956), where the court upheld a finding that a cessation of production to rehabilitate a well was temporary and did not terminate a defeasible-term interest.

The holdings in *Beatty* and *Postier* are called into question by the court's decision in *Ludwig v. William K. Warren Foundation*, 809 P.2d 660 (Okla.1990). After the sole well on the property ceased producing and efforts to restore production were unsuccessful, a new well was commenced and production was re-established. In a 5–4 decision, the majority explicitly rejected the temporary cessation rule from oil and gas lease cases:

> It is clearly established in Oklahoma that temporary cessation of production will not result in termination of an oil and gas *lease. State ex rel. Commissioners of the Land Office v. Amoco Production Co.*, 645 P.2d 468 (Okl.1982). The instrument under consideration in this appeal is *not* a *lease* [;] it is a defeasible *mineral deed*, and therein lies the distinction which renders the *Amoco* case not applicable to this appeal.
>
> In Oklahoma holdings from oil and gas lease cases are not entirely applicable to issues arising under defeasible term mineral deed cases. *Beatty v. Baxter*, 208 Okl. 686, 258 P.2d 626 (1953); *Fransen v. Eckhardt*, 711 P.2d 926 (Okl.1985).

*Ludwig*, 809 P.2d at 661 (emphasis in original). Although citing *Beatty* for the stated proposition, the *Ludwig* majority inexplicably fails to address the clear holdings of *Beatty* and *Postier* that a temporary cessation of production does not automatically terminate a royalty interest or a defeasible-term interest. With little further discussion, and without an explicit determination whether the cessation was permanent or temporary, the court upheld the determination that the interest was extinguished by the termination of production. The dissent concluded that the temporary cessation rule from lease cases should apply, *Ludwig*, 809 P.2d at 663–665 (Doolin, J., dissenting), but curiously failed to cite the prior holdings in *Beatty* and *Postier* to support that conclusion.

It is difficult to discern whether *Ludwig* implicitly overrules *Beatty* and *Postier*.[2] Although the *Ludwig* majority appears to hold that even a temporary cessation of production in the secondary term will terminate a defeasible-term interest, the court cites *Beatty* without questioning or overruling its ultimate holding.

Whatever the true state of the law in Oklahoma, we conclude that the Texas and Kansas approach is more rational and equitable. The rule urged by the Greenfields— that any cessation of production, regardless of cause or duration, will terminate the interest—is too harsh and inflexible. *See Feland*, 171 N.W.2d at 836. In this respect, we agree with the reasoning of the dissent in *Ludwig*, 809 P.2d at 664 (Doolin, J., dissenting):

> Here the cessation of production, which is the single event which keyed the remaindermen's claim that the conveyance was defeated, was accidental, unforeseen and was caused through no fault of appellants'. The risky and unpredictable nature of the production of oil and gas guarantees that such events will occur and I believe that to allow those events to divest a mineral owner of his title will inject an unnecessary and avoidable element of uncertainty into a business already more uncertain than almost any other. While the majority speaks of the operation of equity in matters of title to real property, it nonetheless ignores what I perceive as the inequitable result of the rule pronounced today.

    \*     \*     \*     \*     \*     \*

The majority's opinion holds that a temporary cessation of production will terminate a defeasible-term mineral interest, but not an oil and gas lease. While I would not reject the proposition that oil and gas leases are governed by different considerations and rules of construction than royalty in-

---

**2.** The parties in this case did not cite *Ludwig* or *Postier*. The Greenfields argued that *Beatty* had been called into question by *McEvoy v. First National Bank and Trust Co.*, 624 P.2d 559 (Okla. Ct.App.1980), and impliedly overruled by *Fransen v. Eckhardt*, 711 P.2d 926 (Okla.1985). In both *McEvoy* and *Fransen*, wells were completed on the property during the primary term, but actual commercial production did not begin until

after the primary term had expired. The courts held that, because there was no production occurring at the end of the primary term to continue the interest into the secondary term, the interest terminated when the primary term expired. *Fransen*, 711 P.2d at 931; *McEvoy*, 624 P.2d at 562–563. The questions presented in *Fransen* and *McEvoy* are distinguishable from those in *Beatty* and *Postier*.

terests, I cannot agree that rules applicable to leases which are designed to enhance and encourage the profitable production of minerals do not apply with the same force of logic to defeasible mineral deeds. If the rules are fair and beneficial in the former case, why would they not be fair and beneficial in the latter? I do not believe that leases and royalty interests should never be treated differently, but simply that a cessation of production affects all interests in the same way and no distinction is warranted in the way such cessation should affect title.

We hold that a temporary cessation of production in the secondary term will not automatically terminate a defeasible-term interest. Whether a cessation is temporary or permanent is a question of fact. *Wagner,* 318 P.2d at 1044–1045; *Campbell,* 427 S.W.2d at 708; 2 Williams & Meyers, § 334.8; *see Feland,* 171 N.W.2d at 835. In making that determination, the court should consider the following factors: "(1) The period of time cessation has persisted; (2) the intent of the operator; and (3) the cause of the cessation." 2 Williams & Meyers, § 334.8, at 171. As the Kansas cases recognize, *Wagner,* 318 P.2d at 1046, and *Wilson,* 188 P.2d at 907, a fourth factor is also relevant—diligence of the term interest owner. Furthermore:

> No one piece of evidence will be conclusive. The fact finding must be based on all the evidence. Thus a short period of cessation in which the well is plugged and abandoned may support a finding of permanent cessation, while a long period of cessation, during which the operator is diligently seeking to restore production from a commercial pool, may support a finding of temporary cessation.

2 Williams & Meyers, § 334.8, at 173. All four factors should be weighed together to make the factual determination.

That legal rule applies to this case. The trial court found that the cessation of production was temporary and granted the defendants' motion for summary judgment. We recently summarized the standards governing summary judgment in *Ellingson v. Knudson,* 498 N.W.2d 814, 817 (N.D.1993) (citations omitted):

Under Rule 56, N.D.R.Civ.P., a summary judgment should be granted only if it appears that there are no issues of material fact or any conflicting inferences which may be drawn from those facts.... The party seeking summary judgment has the burden to clearly demonstrate that there is no genuine issue of material fact.... In considering a motion for a summary judgment, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from the evidence to determine whether summary judgment is appropriate.... The court must view the evidence in a light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence.

There are numerous disputed and material facts left unresolved in this case, including the cause of the cessation of production, the intent of the operator, and the diligence of the term interest owners after production ceased. The trial court clearly drew favorable inferences and made a "finding" on the ultimate disputed fact in the case: whether the cessation of production was temporary or permanent. Summary judgment is inappropriate if the court must draw favorable inferences and make "findings" on disputed facts to support the judgment. *Brown v. North Dakota State University,* 372 N.W.2d 879, 883 (N.D.1985). Because there are genuine issues of material fact for trial, the court erred in granting the motion for summary judgment.

The judgment is reversed and the case is remanded for further proceedings.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.