## Lamb, et al. v. Vansyckle, et al.

(Decided November 18, 1924.)

### Appeal from Allen Circuit Court.

1. Mines and Minerals—Lease to Continue so Long as Oil or Gas is Produced in Paying Quantities is Not Terminated by Brief Cessation of Development.—An oil and gas lease to continue for a definite period, and so long as oil or gas is produced in paying quantities, is not ipso facto terminated by cessation for brief length of time of production or development.

2. Mines and Minerals—Oil and Gas Lease Held Not Terminated by Cessation of Development for Fifty-Six Days.—Oil and gas lease to remain in force for two years, and so long as oil or gas was produced in paying quantities, for which $4,200.00 had been paid, and under which five wells had been drilled, two of which were producers, held not terminated by cessation of development for fifty-six days after two-year period during which lessee's financial affairs were in course of adjustment

JOHN S. MILLIKEN and HARPER & DENTON for appellants.

W. D. GILLIAM for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On June 19, 1920, E. K. Lamb and others executed to J. A. Ross and S. W. Vansyckle an oil and gas lease on a 100 acre tract of land in Allen county. The consideration was $4,200.00 cash, and the usual royalty. The material provisions of the lease are as follows:

"It is agreed that this lease shall remain in force for a term of two years and as long as oil or

gas or either of them is produced therefrom by the parties of the second part, their heirs, successors or assigns.

"Second parties agree to begin well on said premises within four and one-half months after the execution of this lease by the first parties, and complete said well as soon as practical, and if oil is found in paying quantities that parties of the second part agree to continue in good faith.

"If the first well is dry, the parties of the second part agree to drill another well on said premises within one year after the completion of the first well. If no oil or gas is found on said premises and should said parties of the second part quit drilling for same for a period of 90 days after the completion of the second well, then this lease shall be null and void and revert to the parties of the first part, but this lease shall remain in force as long as oil or gas or either is produced therefrom in paying quantities or operations continued thereon.".

On September 1, 1920, E. K. Lamb, J. E. Taylor, and his wife, Biddie Taylor, purchased from the other lessors all their interest in the land.

On November 11, 1920, J. A. Ross sold and assigned his interest in the lease to S. W. Vansyckle.

Prior to January 1, 1922, Vansyckle drilled five wells on the land at an average cost of $800.00 each. Two of the wells contained oil, and were equipped for pumping. A 250 barrel tank was erected on the land, and $126^{48}/_{100}$ barrels of oil were pumped and sold for the sum of $180.95, and the royalty paid to the lessors. In 1921, the price of oil was very low. Vansyckle became financially embarrassed, and was sued by a number of creditors. Pursuant to a judgment, the leasehold was sold, but for some reason the sale was set aside. Prior to the expiration of the two years, the lessors insisted on further development. The last time Vansyckle was seen on the leased premises was on March 17, 1922. During the latter part of that month Vansyckle wrote to one of the lessors saying that he expected to return in a few days, pay up everything, and leave a clean sheet.

Thereafter the leasehold was ordered sold by the Allen circuit court, and the sale was advertised to take place on August 14, 1922.

On August 11, 1922, the lessors brought this suit to quiet their title to the land covered by the lease, and alleged that the lease had expired on June 19, 1922; that neither oil nor gas had been produced from the leased premises since that date; that no operations had been continued thereon since that time; and, that the lessee had abandoned the lease some time prior to its expiration. On August 14, 1922, about 11 o'clock a. m., the lessors filed in the office of the clerk of the Allen circuit court, a *lis pendens* notice. On the afternoon of the same day, the leasehold was sold and H. P. Gardner became the purchaser.

On final hearing the petition was dismissed, and the lessors have appealed.

In the case of Collins v. Mount Pleasant Oil & Gas Company, 85 Kan. 483, 118 Pac. 54, 38 L. R. A. (N. S.) 134, the lessors granted to the lessees the exclusive right for five years to enter upon a tract of land and drill for oil. The consideration was a small sum in cash, and the agreement by the lessees to deliver in tanks to the lessors one-eighth of the oil produced. It was provided that if oil in paying quantities was discovered, the right of the lessees to operate should continue as long as it was found in paying quantities, and, when abandoned for such purposes, the grant should cease and be no longer binding on either party. The lessees drilled five wells in which oil was found, and cased them, but claimed that the prevailing prices of oil did not warrant operation, and so the wells were capped, and no oil was ever pumped therefrom. It was held that the failure to operate for five years was a practical abandonment within the meaning of the contract, and the lessors were entitled to a cancellation of the lease.

Another case involving a similar question is Howerton v. Kansas Natural Gas Company, 81 Kan. 553, 106 Pac. 47, 34 L. R. A. (N. S.) 34. There the lease provided that the lessee should have the right to go upon a 179 acre tract of land, drill or produce oil or gas on the payment of $1.00, the furnishing of gas to the lessor for domestic purposes, if gas was found in quantities justifying the expense of marketing, and $50.00 per year during the time the gas should be marketed from each producing well. A producing well was drilled within a year, and gas was furnished the lessor for domestic purposes, but

no oil was marketed from the property. No other wells were drilled, and the lessor never received anything except the $1.00 and gas for his home. Gas wells were drilled on adjacent lands from which some gas was taken and marketed. Four years after the completion of the well, the lessor sued to have the lease cancelled, and it was held that the failure to utilize or market gas, or otherwise develop the property, was contrary to the spirit and purpose of the lease, and that a delay of more than four years was for an unreasonable time.

In the case at bar the lessee not only paid a substantial consideration, to-wit, the sum of $4,200.00, but manifested his good faith by actually drilling on the premises five wells, two of which were producers, at an average cost of $800.00 each. As there was a substantial compliance with the provisions of the lease, no ground of forfeiture occurred in the two years during which the lease was to continue in force, and the short delay in development and production which occurred during the time that the lessee was endeavoring to raise additional funds to discharge his indebtedness and continue operations, is not sufficient to show the abandonment of the lease before its expiration. Nor are we willing to adopt the rule that a lease which is to continue for a definite period, and so long as oil or gas is produced in paying quantities, *ipso facto* terminates whenever production or development ceases for a brief period of time. On the contrary, we have reached the conclusion that the only fair and just rule is to hold that the lease continues in force unless the period of cessation viewed in the light of all the circumstances is for an unreasonable time. Here, there was a delay of only fifty-six days after the two year period expired, and that at a time when the rights of creditors had intervened, the leasehold had been ordered sold by the court, and there was no one willing to undertake the further operation of the lease until the rights of the parties were adjusted. In view of these circumstances we conclude that the delay in development or production was not so unreasonable as to put an end to the lease, and that the chancellor did not err in so holding.

Judgment affirmed.