645 P.2d 468 (1982)
The STATE of Oklahoma On Relation of the COMMISSIONERS OF the LAND OFFICE OF SAID STATE, Appellee,
v.
AMOCO PRODUCTION COMPANY, Appellant.
No. 53462.
Supreme Court of Oklahoma.
February 2, 1982.
Rehearing Denied March 22, 1982.
As Amended March 30, 1982.
Paul Degraffenreid, Oklahoma City, for appellee.
C. Harold Thweatt of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellant.
*469 DOOLIN, Justice:
This is an appeal by defendant, Amoco Production Company (lessee), from a judgment of the District Court of Harper County, Oklahoma, quieting title in the State of Oklahoma (lessor) against Amoco's oil and gas lease.
The case was tried upon stipulation of facts. Lessor owns the mineral rights under the South half of the Southeast Quarter of Section 2, Township 26 North, Range 24 West, Harper County, Oklahoma. Lessee purchased a lease covering the above described land. The lease was dated June 12, 1956, recorded July 13, 1956. The oil and gas lease was held in force and effect beyond the five year primary term by production from the Herionymus Unit D-2 well. Production ceased in January of 1975, as a result of mechanical difficulties (collapsed casing) and in the same month a second well was commenced which was completed on the premises to the same formation in March of 1975. Sales from the second well commenced in June of 1975.
The question of law before the Court may be one of first impression in this State: where production ceases from a well due to mechanical difficulty, may the lessee continue the lease in force and effect by promptly drilling a new well to produce from the same formation?
The trial court responded in the negative. We disagree.
*470 After production was established, lessee became vested with an estate that would endure as long as it conducted diligent operations to produce from the known formation.
We held in Godfrey v. McArthur, 186 Okl. 144, 96 P.2d 322, 325 (1939):
"After production is found in time to preserve the lease, the question with reference to its extension and operation over all the premises described therein is one of diligent and proper development according to the covenants contained in the lease; it is a question of forfeiture, not one of expiration."
The lease in question is for a five year primary term "and as long thereafter as oil or gas or either of them is produced in paying quantities." Lessor places great emphasis on the contract language. The provision about paying quantities adds little to the term production since it is settled that production must be in paying quantities even though a lease contains no such provision. Gypsy Oil Co. v. Marsh, 121 Okl. 135, 248 P. 329 (1926); State v. Carter Oil Company, 336 P.2d 1086 (Okl. 1958). It is the ability of the lease to produce that is the important factor rather than actual production applied, as an example of ability to produce a shut-in gas well will hold a lease as long as the operator seeks a market with due diligence. McVicker v. Horn, Robinson and Nathan, 322 P.2d 410 (Okl. 1958).
Oklahoma case law establishes that a temporary cessation of production will not result in the termination of an oil and gas lease: Cotner v. Warren, 330 P.2d 217 (Okl. 1958) involved a shut-in well because of a partnership dispute. Kerr v. Hillenburg, 373 P.2d 66 (Okl. 1962) involved a reparable well not producing because a head cracked on the engine which was the power source. Durkee v. Hazan, 452 P.2d 803 (Okl. 1968) involved a shut-in well because of a legal dispute.
This Court has adopted the rule stated in Lamb v. Vansyckle, 205 Ky. 597, 266 S.W. 253, 254 (1924) in Cotner v. Warren, 330 P.2d 217, 219:
"Nor are we willing to adopt the rule that a lease which is to continue for a definite period, and so long as oil or gas is produced in paying quantities, ipso facto terminates whenever production or development ceases for a brief period of time. On the contrary, we have reached the conclusion that the only fair and just rule is to hold that the lease continues in force unless the period of cessation, viewed in the light of all the circumstances is for an unreasonable time."
"The burden of proof showing failure of reasonable diligence in operation is upon the lessor and proof of failure must be clear." Durkee v. Hazan, supra, 814.
Lessor does not dispute that the cessation of production was due to an involuntary mechanical failure. Nor does lessor aver that lessee failed to exercise due diligence in commencing the restoration of production. Instead, lessor attempts to convince this Court that the rule of temporary cessation of production should not be applied at all. We are asked to draw legal distinctions between the types of mechanical problems that cause production to be interrupted. Broken pumps would fall within the rule of temporary cessation of production and lessee would have a reasonable time to correct the problem and restore production. Collapsed casing would fall outside the rule since to correct this mechanical failure would require a new hole be drilled. We are unimpressed with such an arbitrary approach; at most it is artificial.
Lessor relies on the case of Statex, et al. v. Petroleum, Inc., et al., 308 F.2d 815 (CCA 10th 1962). In that case a second well was drilled after the collapse of casing in the producing well on the lease after the expiration of the primary term. Although similar in facts, the Federal Court held that Statex (assignee of first lessee) had interpreted the lease as having terminated and concluded it was bound by its interpretation. At page 817 it stated, "Under all the circumstances including the terms of the November 29, 1954 lease, the construction placed thereon by the parties and the abandonment of the Barby Well after permanent *471 loss of its production, plaintiffs (assignee of first lessee) are entitled to assert no rights under said lease which expired prior to the execution of the lease dated November 11, 1960, to defendant Petroleum, Inc. (second lessee)." At page 820 the Federal Court added:
"... the lower court found, undoubtedly on the basis of the letters written by Dawson to the other appellants and to the landowners" agent and the efforts to secure a ratification of the lease as well as other circumstances in the case, that the parties to the lease construed it as not continuing in effect so as to allow commencement of a second well after the Barby well was abandoned."
The case at bar is void of any circumstances that would lead us to conclude that lessees had construed the contract as terminating, or any action showing intent of abandoning the lease.
We find the reasoning of our sister state decisive. In Amoco Production Company v. Braslau, 561 S.W.2d 805 (Tex. 1978) due to mechanical difficulty the casing collapsed inside the well bore. The Court applied the rule of temporary cessation of production and held that a second well drilled, even drilled to a different formation, kept the lease alive. The Court based its decision on Stuart v. Pundt, 338 S.W.2d 167 (Tex.Civ. App. 1960):
"The holding in Stuart v. Pundt was that the mechanical difficulties and the prompt drilling of the new well constituted a temporary cessation of production; i.e., that there was no termination of the mineral interest (the term royalty) even though production was from a new or different well."
We hold that where production ceases due to mechanical problems, the lease continues in force and effect by the diligent efforts to restore production by a reasonable and prudent operator.[1]
In the case at hand the cessation of production was due to mechanical difficulty beyond the control of lessee. Lessee immediately and diligently drilled a second well to the same formation restoring production. In light of all the circumstances the lessee acted reasonably and diligently. The lease did not expire by its own terms. Cancellation of the lease under these circumstances would be harsh and unfair.
REVERSED WITH DIRECTIONS TO QUIET TITLE TO LEASE IN DEFENDANT.
BARNES, V.C.J., and HODGES, LAVENDER, SIMMS and OPALA, JJ., concur.
NOTES
[1] Courts have traditionally looked upon forfeiture with disdain, and have sought to avoid it when possible, citing a strong policy of our statutory law and equitable considerations against it. Stewart v. Amerada Hess Corp., 604 P.2d 854, 858 (Okl. 1979). The vehicle commonly used to relieve forfeiture has been equity:

"There is no undeviating principle that equity shall enforce the covenants of a mortgage, unmoved by an appeal ad misericordiam, however urgent or affecting. The development of the jurisdiction of the chancery is lined with historic monuments that point another course... . One could give many illustrations of the traditional and unchallenged exercise of a like dispensing power. It runs through the whole rubric of accident and mistake. Equity follows the law, but not slavishly nor always." See Murphy v. Fox, 278 P.2d 820, 825 (Okl. 1955), which quoted Cardoza in Graf v. Hope Building Corp., 254 N.Y. 1, 171 N.E. 884, 70 A.L.R. 984, 988.