Albert LUDWIG and Emma
Ludwig, Appellees,

v.

The WILLIAM K. WARREN FOUNDA-
TION and Barter Island Oil
Company, Appellants.

No. 68075.

Supreme Court of Oklahoma.

Sept. 25, 1990.

As Changed May 2, 1991.

Dissenting Opinion of Justice Doolin
May 6, 1991.

Rehearing Denied May 6, 1991.

Ronald N. Ricketts, Gable & Gotwals, Tulsa, for appellants.

Vincent Mesis, Jr., Hennessey, for appellees.

HARGRAVE, Chief Justice:

Plaintiffs, Albert and Emma Ludwig, brough an action in the District Court of Kingfisher County to quiet title to an undivided one-half interest in the minerals under the East half of the Southeast quarter of Section 35, Township 19 North, Range 6 West, Kingifsher County, Oklahoma. Plaintiffs claimed that a defeasible term mineral interest had expired when production from the original well had ceased. The district court quieted title in the plaintiffs against the defendants, Tenneco Oil Company, Barter Island Oil Company and The William K. Warren Foundation. This judgment was appealed and the cause was assigned to the Court of Appeals and that court affirmed the judgment of the lower court. This Court granted certiorari and after review vacates the decision of the Court of Appeals and affirms the trial court.

The sole issue under consideration here is whether a defeasible term mineral interest (as distinguished from a lease) for a term of twenty years and as long thereafter as oil and/or gas or other minerals are produced from the land, expires when the only producing well on the property ceases production after the twenty-year period set forth in the mineral deed and a new well is drilled and production thereafter re-established.

The Ludwigs owned the mineral rights to the East half of the Southeast quarter section above described and, in 1961, they conveyed an undivided one-half mineral interest in the property to appellants' predecessor. This deed conveyed the mineral interest "for a period of 20 years from December 22, 1961 and as long thereafter as oil and/or gas or other minerals [were] produced from the land herein described". During the primary period stated in the deed one well was drilled on the property, the Emma Ludwig No. 1, and was operated by Tenneco Oil Company. This was the sole well on the property and it produced continuously into the secondary term. Production ceased in February, 1984. Efforts to restore production were unsuccessful, and a new well was commenced and production was re-established from this second well.

It is clearly established in Oklahoma that temporary cessation of production will not result in termination of an oil and gas lease. *State ex rel. Commissioners of the Land Office v. Amoco Production Co.*, 645 P.2d 468 (Okl.1982). The instrument under consideration in this appeal is *not* a *lease* it is a defeasible *mineral deed*, and therein lies the distinction which renders the *Amoco* case not applicable to this appeal.

■ In Oklahoma holdings from oil and gas lease cases are not entirely applicable to issues arising under defeasible term mineral deed cases. *Beatty v. Baxter*, 208 Okl. 686, 258 P.2d 626 (1953); *Fransen v. Eckhardt*, 711 P.2d 926 (Okl.1985).

■ When a mineral deed is given for a term and so long thereafter as oil and gas is produced, the conveyance transfers an estate determinable upon a conditional limitation. Such a conveyance is similar to a conveyance of an acre so long as the land is used as a church. There the church land would have been conveyed by a deed creating a determinable fee upon conditional limitation, which is a fee simple except that it is immediately terminated by the happening of some possible event. *Frensley v. White*, 208 Okl. 209, 254 P.2d 982 (1953); *Oklahoma City v. Local Federal Savings & Loan Ass'n*, 192 Okl. 188, 134 P.2d 565,

569, 570 (1943); *Bonebrake v. McNeill*, 491 P.2d 269 (Okl.1971). An estate on conditional limitation expires with the limitation and reverts to the grantor or his heirs.

A succinct summary of the various types of determinable estates is found in *Frensley v. White, supra,* 254 P.2d at 984 and is quoted here:

> ... There is, first, the determinable fee upon conditional limitation, which is a fee simple except that it is immediately terminated by the happening of some possible event, subsequently. The estate remaining in the grantor after the conveyance of such an estate is a possibility of reverter which he may convey, it being considered an interest in the land. If it is conveyed, it is denominated as a limitation over to the third person. Next, there is the fee estate upon condition subsequent which is a fee simple except that it may be terminated by the grantor by re-entry upon the happening of some possible event, subsequently. What remains to the grantor after the conveyance of such an estate is a power (sometimes loosely designated a possibility of reverter) which is not an interest in the land and is not sufficiently in esse to be subject to conveyance. Then, there exists the fee simple estate which is conveyed by a deed poll, by the terms of which the grantee, upon acceptance of the conveyance impliedly covenants to limit its use to that specified in the deed. Although we have used the word "fee" in these definitions, the same limitation of duration is often a provision in a conveyance of an estate of less quality than a fee but the effect is the same.

■■■ Under 60 O.S.1981 § 40,[1] all remainders limited upon a condition which will operate to abridge or determine a precedent estate are to be deemed conditional limitations. One effect of this statute is to make all conditional limitations devisable, and inheritable, which abolishes the common law concept that a mere right of re-entry upon condition broken could not be alienated. See, *Crowl v. Tidnam*, 198 Okl. 650, 181 P.2d 549 (1947); *Kassner v. Alexander Drug Co.*, 194 Okl. 36, 147 P.2d 979 (1943). Under 60 O.S. § 30 a remainder is any future estate other than a reversion.[2] Although it would appear that § 40 in conjunction with § 30, above, abolished the distinction between conditional limitations and grants on condition subsequent only in the case of remainders, the cases above have held that reversions are additionally all deemed to be conditional limitations and are all alienable as an interest in real property and not simply a power. *Fuhr v. Oklahoma City*, 194 Okl. 482, 153 P.2d 115 (1944); *Kassner v. Alexander Drug Co., supra; Bonebrake v. McNeill, supra.* All remainders are at this time deemed to be conditional limitations. Forfeiture of an estate properly refers only to the conveyance of a fee on condition subsequent. In the case of a conveyance on condition subsequent, the whole fee is conveyed subject to the right of re-entry on condition broken. When the whole estate is conveyed and the grantor re-enters and declares a condition broken, forfeiture of the estate is declared. *Scoggin v. Lewis*, 378 P.2d 869, 873 (Okl.1963); *Oklahoma City v. Local Federal Savings & Loan Association, supra.*

■■ When, as here, both by statute and the express language of the deed, the conveyance is by conditional limitation, the grantor has not conveyed the fee. He retains an interest and therefore termination of the conditional limitation is not a forfeiture.

As an owner of an interest in property it is not precisely correct to speak of forfeiture of the estate granted on condition. The grantor, having bargained and sold a term mineral interest, should not suffer a forfeiture of his valuable property right in

---

1. 60 O.S.1981 § 40 provides:
   A remainder may be limited on a contingency which, in case it should happen, will operate to abridge or determine the precedent estate; and every such remainder is to be deemed a conditional limitation.

2. 60 O.S.1981 § 30 provides:
   When a future estate, other than a reversion, is dependent on a precedent estate, it may be called a remainder, and may be created and transferred by that name.

his reversionary interest. Presumably a grantor would receive less compensation for his term mineral interest than he would for a fee interest in the minerals and thus he should not be deprived of his right to enforce his reversionary interest. The concept that enforcing a defeasability provision in a conveyance is a forfeiture which should be avoided is illustrated by the case of *Stewart v. Amerada Hess Corp.*, 604 P.2d 854 (Okl.1980). In the case of leases, such a result is both warranted and commendable. The lessee has spent heavily obtaining production from the lease he purchased. Leases are purchased with the intent to produce. His large expenditure in acquiring production is one reason not to cancel his right to produce, for he should be allowed every chance to profit from what is, at the best of times, a risk and oftentimes simply a gamble. Cancellation of a term mineral interest does not affect the lessee's right to produce. From the lessee's position the only change is the name of the payee on the royalty checks. These considerations are fully set forth in the analysis of the situation in *Fransen v. Eckhardt, supra.*

In the case of a term mineral interest however, forfeiture as discussed in *Amerada Hess, supra,* is not properly applicable. *Amerada* states that by virtue of 23 O.S. 1981 § 2 forfeitures are to be avoided through equitable considerations. The distinction is, we are here dealing with a deeded interest in property. 23 O.S. § 2 is found in the title named *Damages.* Section 2 states:

> Whenever by the terms of an obligation, a party thereto incurs a forfeiture, or the loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in cases of a grossly negligent, willful or fraudulent breach of duty.

■ In the case of real property title and conveyancing this statute is not properly applicable. This cause seeks no damages from anyone, but only asks that the terms of a mineral deed be enforced. Land is unique. Equity will grant specific performance rather than substitute damages therefore. *Berry v. Second Baptist Church of Stillwater*, 37 Okl. 117, 130 P. 585 (1913). *Wasson v. Haynie*, 318 P.2d 420 (Okl.1957) quotes from *Berry, supra,* "An action for damages is not an adequate remedy for a breach of a contract to convey land and the vendee in such a contract is entitled to specific performance, although he could recover in an action for damages for the breach." Equity decrees specific performance of a contract to sell land because land is *sui generis,* or unique, and damages as an alternative remedy for failure to perform are not adequate relief. *Danciger Oil & Refining Co. v. Burroughs*, 75 F.2d 855, cert. den., 295 U.S. 758, 55 S.Ct. 915, 79 L.Ed. 1700 (10th Cir. 1935). Properly analyzed, this case concerns a reversion, not a forfeiture. Unity of title is promoted by enforcement of term mineral interests as noted in *Fransen, supra.*

Accordingly, the trial court did not err when it quieted title to the mineral estate in the plaintiffs.

THE COURT OF APPEALS OPINION IS VACATED, AND THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED.

HODGES, LAVENDER, ALMA WILSON and KAUGER, JJ., concur.

OPALA, V.C.J., and SIMMS, DOOLIN and SUMMERS, JJ., dissent.

DOOLIN, Justice, dissenting.

The opinion of the majority recognizes that an *oil and gas lease* is not defeated by a temporary cessation of production, but makes a different rule to govern an interest created by a *defeasible-term mineral deed.* I find this to be a distinction without a difference and I must, therefore, dissent.

While I agree generally with the majority's definitions and characterizations regarding the nature of the "defeasible-term mineral interest" created in this case, I believe a caveat is necessary. I would find that the interest created by the grant in this case is more precisely characterized as a mineral estate for a term of years which

is thereafter defeasible by cessation of production. This estate is not analogous to the common law estate upon conditional limitation, known also as a fee base estate or as a defeasible fee. The latter type of estate terminates upon the happening of an event the occurrence of which depends upon a specified, proscribed use of the land through a deliberate act of the grantee or his successors.

I cannot agree with the majority when it finds that the "defeasible-term mineral interest," no matter how it is defined, should be terminated under the circumstances of this case.

Here the cessation of production, which is the single event which keyed the remaindermen's claim that the conveyance was defeated, was accidental, unforeseen and was caused through no fault of appellants'. The risky and unpredictable nature of the production of oil and gas guarantees that such events will occur and I believe that to allow those events to divest a mineral owner of his title will inject an unnecessary and avoidable element of uncertainty into a business already more uncertain than almost any other. While the majority speaks of the operation of equity in matters of title to real property, it nonetheless ignores what I perceive as the inequitable result of the rule pronounced today.

The majority is correct when it notes that case law in Oklahoma clearly establishes that a temporary cessation of production will not result in the termination of an oil and gas lease.[1] In the *Amoco* case we held that where production ceases due to mechanical problems, a lease will continue in force and effect if diligent efforts are made by a reasonable and prudent operator to restore production.[2] Put another way, we have heretofore held that a lease continues in force when production ceases for a brief period of time "unless the period of cessa-

tion, viewed in the light of all the circumstances, is for an unreasonable time."[3] Nothing in the majority's reasoning persuades me that this same rule should not apply with equal effect to cases involving defeasible mineral deeds.

The majority's opinion holds that a temporary cessation of production will terminate a defeasible-term mineral interest, but not an oil and gas lease. While I would not reject the proposition that oil and gas leases are governed by different considerations and rules of construction than royalty interests, I cannot agree that rules applicable to leases which are designed to enhance and encourage the profitable production of minerals do not apply with the same force of logic to defeasible mineral deeds. If the rules are fair and beneficial in the former case, why would they not be fair and beneficial in the latter? I do not believe that leases and royalty interests should never be treated differently, but simply that a cessation of production affects all interests in the same way and no distinction is warranted in the way such cessation should affect title.

In *Amoco* we held that a lease was not forfeited by cessation of production due to mechanical difficulties when production was subsequently restored by the drilling of a second well.[4] Our decision was partly based on two Texas cases which held that a cessation of production with subsequent restoration did not terminate the interests involved.[5] Both these cases involved royalty interests, not leases, and the Texas court had no difficulty in seeing that precisely the same considerations should govern in both instances. This reflects my position that a temporary cessation of production, in and of itself, should not terminate *either* a lease or a defeasible-term mineral interest.

**1.** *State ex rel. Commissioners of the Land Office v. Amoco Prod. Co.,* 645 P.2d 468 (Okl.1982); *Cotner v. Warren,* 330 P.2d 217 (Okl.1958); *Kerr v. Hillenberg,* 373 P.2d 66 (Okl.1962); *Durkee v. Hazan,* 452 P.2d 803 (Okl.1968).

**2.** *Amoco, supra,* at 471.

**3.** *Cotner, supra,* at 219, (adopting the rule of *Lamb v. Vansuckle,* 205 Ky. 597, 266 S.W. 253, 254 (1924)); *Amoco,* at 470.

**4.** *Amoco, supra,* at 471.

**5.** *Amoco Production Co. v. Braslau,* 561 S.W.2d 805 (Tex.1978); *Stuart v. Pundt,* 338 S.W.2d 167 (Tex.Civ.App.1960).

Because I would hold that defeasible-term mineral interests are not to be distinguished from leases when deciding if a temporary cessation of production terminates the interest, I would find the holding in *Amoco* controls this case. I would reiterate the language in *Amoco* which says that termination of the interest under these circumstances would be harsh and unfair.

I would reverse the judgment of the trial court.

I am authorized to state that OPALA, C.J., and SIMMS, J., join in the views expressed herein.