184 P.3d 502 (2008)
2008 OK 13
ROX PETROLEUM, L.L.C., Plaintiff/Appellant,
v.
NEW DOMINION, L.L.C.; GingerLynn, Inc.; Oklahoma Title Clearing Corporation; Norma L. Doerfler; and Hoster Brothers, Inc., Defendants/Appellees, and
Markeeta A. Hopwood, Defendant.
No. 104,664.
Supreme Court of Oklahoma.
February 12, 2008.
Rehearing Denied April 14, 2008.
Timothy C. Dowd, Elias, Books, Brown & Nelson, Oklahoma City, OK, for Plaintiff/Appellant.
Fred M. Buxton, Tulsa, OK, for Defendant/Appellee, New Dominion, L.L.C.
Gary S. Chilton, Holladay, Chilton & DeGiusti, P.L.L.C., Oklahoma City, OK, for Defendant/Appellee, Oklahoma Title Clearing Corp. and Norma L. Doerfler.
Craig W. Hoster and Mark D. Christiansen, Crowe & Dunlevy, Oklahoma City, OK, for Defendant/Appellee, GingerLynn, Inc. and Hoster Brothers, Inc.
TAYLOR, J.
¶ 1 The plaintiff, Rox Petroleum, L.L.C. (Rox) brought this suit against the defendants, New Dominion, L.L.C., GingerLynn, Inc., Oklahoma Title Clearing Corporation, Norma L. Doerfler, and Hoster Brothers, Inc.[1] (surface owners) to quiet title to mineral interests in the southwest quarter of section *504 24, township eleven north, range three west of the Indian Meridian (the property). Except for GingerLynn, Inc., all the surface owners filed a counterclaim with their answers. The question before us is whether the district court erred in granting summary judgment in favor of the surface owners. We answer that the district court did err.

I. STANDARD OF REVIEW
¶ 2 This is an appeal from the trial court's grant of summary judgment in favor of the defendants. Summary judgment is a pretrial procedure available where there is no dispute as to the material facts, Pickens v. Tulsa Metropolitan Ministry, 1997 OK 152, ¶ 7, 951 P.2d 1079, 1082, and the evidentiary materials establish each and every material fact necessary to support a judgment as a matter of law. Manley v. Brown, 1999 OK 79, ¶ 22, 989 P.2d 448, 455-456. Summary judgment settles only questions of law, which we review de novo. Id. Summary judgment is proper when there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

II. FACTS
¶ 3 In 1927, Jennie Clauer was the record owner of the surface and mineral interest in the property. On December 3, 1927, Jennie Clauer and her husband executed a mineral deed conveying an undivided one-fourth interest in the minerals to Indian Territory Illuminating Oil Company and an undivided one-fourth interest to Foster Petroleum Corporation (conveyed minerals) for "a period of ten (10) years, and as long thereafter as oil and gas is produced from said land. . . ."
¶ 4 In 1942, the property vested in Jennie A. Clauer, Henry Irving Clauer, Jack B. Clauer, and Mary Jane Herring.[2] In December of 1955, Mary Jane Herring executed a quitclaim deed and Jennie A. Clauer and Jack B. Clauer also executed a quitclaim deed to the property in favor of The Oklahoma City Chamber of Commerce.[3] Both quitclaim deeds passed title to the property with the following reservation:
EXCEPT all the oil, gas and other minerals, all that portion of such minerals now owned by grantors being reserved by them, with the right of ingress and egress for mining and producing the same. . . .
(Emphasis added.)
¶ 5 In 1956, The Oklahoma City Chamber of Commerce conveyed the property by warranty deed to American First Title and Trust Company. This warranty deed, as does the subsequent deeds in this chain of title, contains the following or similar language: "Less and except all oil, gas, minerals which may be produced from all of the property herein described and conveyed." The surface owners trace their title back to the 1955 quitclaim deeds and claim title to the minerals based on them.
¶ 6 Jennie A. Clauer and Mary Jane Herring died, leaving Jack B. Clauer as the sole surviving joint tenant. Jack B. Clauer died with the residue of his property passing to the Board of Trustees of Carleton College. Rox claims the reversionary interest to the conveyed minerals passed under this residue clause and claims title based on it through a series of conveyances.

III. PROCEEDINGS BEFORE THE DISTRICT COURT
¶ 7 Rox moved for summary judgment, and the surface owners responded and also moved for summary judgment. The district court granted summary judgment to the surface owners and, in its order, allocated the shares in the minerals nineteen thirty-sixths to Rox, Inc. and seventeen thirty-sixths to the surface owners and nondefendants. Appeal was taken pursuant to Supreme Court Rule 1.36, 12 O.S.2001, ch. 15, app. 1. No appellate briefs were ordered to be filed, and appellate review is confined to the record actually presented to the trial court. Id. at *505 rule 1.36(g). Feeling constrained by Ford v. Raab, 1987 OK 98, 744 P.2d 956, the Court of Civil Appeals affirmed. This Court granted a writ of certiorari.
¶ 8 Rox argued that the reservation in the two 1955 quitclaim deeds conveying the property to The Oklahoma City Chamber of Commerce reserved the reversionary interest to the conveyed minerals underlying the property. Relying on Ford v. Raab, 1987 OK 98, 744 P.2d 956; Lahman v. Bassel, 1962 OK 174, 373 P.2d 245; Whitman v. Harrison, 1958 OK 141, 327 P.2d 680; and Kassner v. Alexander Drug Co., 1943 OK 293, 194 Okla. 36, 147 P.2d 979, the surface owners argued the 1955 quitclaim deeds did not clearly express a reservation of the reversionary interest in the conveyed minerals.

IV. ANALYSIS
¶ 9 In determining whether a reversionary interest is reserved or excepted in a deed, the foremost consideration is the parties' intent. Knight v. Kimble, 1924 OK 472, ¶¶ 3-4, 99 Okla. 48, 225 P. 909, 910. It is a rule that the intent to reserve or except a reversionary interest from a grant must be unambiguous and unequivocal. Ford, 1987 OK 98 at ¶¶ 8-9, 744 P.2d at 959. The rule that the reservation of a reversionary interest must be clearly expressed is based, at least in part, on title 16, section 29 of the Oklahoma Statutes. Section 29 provides: "Every estate in land which shall be granted, conveyed or demised by deed or will shall be deemed an estate in fee simple and of inheritance, unless limited by express words." Section 29 applies equally to quitclaim deeds and warranty deeds.
¶ 10 Under the rule that a reservation of a reversionary interest must be clearly expressed, a person conveying real property is presumed to convey all his interest in the property. Kassner, 1943 OK 293 at ¶¶ 7-16, 147 P.2d at 980-981; accord Ford, 1987 OK 98 at ¶¶ 9-11, 744 P.2d at 959. This rule does more than give rise to an evidentiary presumption; it gives rise to "a fixed presumption imposed by law" and establishes a rule of construction for a conveyance. Kassner, 1943 OK 293 at ¶ 15, 147 P.2d at 981. "The rule comes into play when the conveyance is executed and delivered, so as to settle titles, which therefore need not wait suspended until testimony of intent is given years later." Id. The presumption may be rebutted only by a clear, express contradictory intent found within the four corners of the conveyance itself. Id. at ¶ 16. Parol evidence may not be relied upon to rebut the presumption. Id. at ¶ 18, p. 982. Thus, if the conveyance does not clearly express an intent to except or reserve a reversionary interest within its four corners, the conveyance will be deemed to have transferred the reversionary interest. Ford, 1987 OK 98, 744 P.2d 956.
¶ 11 In the 1955 quitclaim deeds, the grantors excepted "all that portion of [the oil, gas, and other] minerals now owned by grantors being reserved by them." We must determine the interest in the conveyed oil, gas, and minerals owned by the grantors at the time the 1955 quitclaim deeds were executed. In doing so, we examine the 1927 mineral deed to determine what interest the grantors retained in the conveyed minerals. A deed, such as the 1927 mineral deed, given for a term and so long after as oil and gas is produced transfers a determinable fee upon a conditional limitation. Ludwig v. William K. Warren Foundation, 1990 OK 96, ¶ 6, 809 P.2d 660, 661. A deed creating a determinable fee upon a conditional limitation creates a "fee simple except that it is immediately terminated by the happening of some possible event." Id. The estate remaining in the grantor after a conveyance of a determinable fee upon a conditional limitation is a possibility of reverter. Frensley v. White, 1953 OK 79, ¶ 5, 208 Okla. 209, 254 P.2d 982, 984. The possibility of reverter is an interest in the oil, gas, and minerals which is alienable and until otherwise conveyed, is retained by the grantor. Id.
¶ 12 Here, the 1927 mineral deed conveyed a determinable fee with the possibility of reverter. The grantors retained the possibility of reverter in the conveyed minerals which they still owned at the time of executing the 1955 quitclaim deeds. The 1955 quitclaim deeds excepted "all that portion of such minerals now owned by the grantors being reserved by them" which included the possibility of reverter in the conveyed *506 minerals. (Emphasis added.) This is a clearly expressed intention, without ambiguity, to reserve the possibility of reverter since it was part of the oil, gas, and other minerals owned by the grantors at the time. To find otherwise would require rewriting the deed to eliminate the words "all that portion of such minerals now owned by the grantors being reserved." Within the four corners of the 1955 quitclaim deeds, the grantors clearly expressed their intent to reserve from the grant all their interest in the conveyed minerals, which would include the possibility of reverter.[4] So when oil and gas production ceased, the conveyed minerals reverted to the grantors and were transferred to Rox, Inc. through a series of conveyances and wills.

V. CONCLUSION
¶ 13 In the 1927 mineral deed, the grantor retained one-half of the minerals which have passed to Rox, Inc. In the 1927 mineral deed, the grantor conveyed a determinable fee on conditional limitation in the other half of the minerals and retained a possibility of reverter. The 1955 quitclaim deeds effectively reserved the possibility of reverter which was alienable and passed also through chain of title to Rox, Inc. No interest in the conveyed minerals passed to the surface owners. Title in the conveyed minerals should have been quieted in the plaintiff, Rox, Inc.
¶ 14 The Court of Civil Appeals' opinion is vacated. The district court's judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.
COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT'S JUDGMENT REVERSED; CAUSE REMANDED.
ALL JUSTICES CONCUR.
NOTES
[1] Markeeta A. Hopwood was initially named as a defendant but by quitclaim deed conveyed her interest to Rox and has been dismissed from this suit.
[2] The facts which caused the property to vest are disputed, but these facts are not material. At some point, Mary Jane Herring's last name changed to Funken. We will refer to her as Mary Jane Herring.
[3] It appears that Henry Irving Clauer had died before the deeds were executed and his interest passed to the surviving tenants.
[4] Our decision in Ford v. Raab, 1987 OK 98, 744 P.2d 956, has caused some confusion. In Ford, we held to the general principles relied on in the resolution of the questions now before us. Ford expressed the rule that an exception in a warranty clause of a mineral interest, including a reversionary interest, is generally not a clear expression of intent to except the mineral interest from the grant. Ford followed this rule but noted that a clear expression in the warranty clause that the grantor intended to except a mineral interest from the grant would be effective to reserve the mineral interest in the grantor. Id. at ¶ 7, p. 958-959.