# GREENSHIELDS v. SUPERIOR OIL CO.

No. 34726.   May 29, 1951.

Rehearing Denied July 3, 1951.

*233 P. 2d 959.*

A. B. Honnold, Tulsa, and J. D. Houk, Fairview, for plaintiff in error.

Richardson, Shartel & Cochran and Richard W. Fowler, Oklahoma City, for defendant in error.

LUTTRELL, V.C.J.  This action was brought by plaintiff, W. D. Greenshields, against Superior Oil Company and other defendants, to establish the validity of oil and gas leases owned by him covering an undivided one-half mineral interest in two tracts of land in Major county. All the defendants except Superior Oil Company defaulted, and default judgment was rendered establishing plaintiff's leases as to them. Superior Oil Company in its answer asserted title to the oil and gas mining rights claimed by plaintiff by virtue of prior leases purported to cover the entire mineral interest under the two tracts in question. The case was tried to the court as one of equitable cognizance. The trial court sustained the contention of Superior Oil Company and held that it was the legal owner of valid and subsisting oil and gas leases covering the full mineral interest in the two tracts involved. Plaintiff appeals.

The facts are undisputed. From the record it appears that on April 6, 1928, the owners of the two tracts involved made, executed and delivered to Home Royalty Association of Oklahoma mineral conveyances covering an undivided one-half interest in the minerals under each tract, each mineral deed providing that it was to extend for a peri-.

od of 21 years from date and as long thereafter as oil, gas, or other minerals were produced. Each of these conveyances were promptly recorded on April 18, 1928, in the records of the office of the county clerk of Major county. By their terms, unless oil or gas were produced, the interests conveyed reverted to the owners of the respective tracts on April 6, 1949. No oil or gas was produced from either tract prior to April 6, 1949. On April 7, 1949, Home Royalty Association released the interests to the owners.

In March, 1944, D. L. Wilkoff procured oil and gas leases from the owners of the two tracts, and in December, 1944, assigned a part of his interest in these leases to Superior Oil Company. Later, in October, 1945, he assigned to Superior the remaining interest not conveyed by his first assignment. Each of these oil and gas leases ran for a term of ten years from date and as long thereafter as oil and gas or either of them was produced from said land.

On November 15, 1944, Home Royalty Association made oil and gas leases covering its mineral interest in each tract to one A. S. Berry. On the same day these leases were by Berry assigned to Wilkoff, and in November said leases were by Wilkoff assigned to Superior Oil Company. The term of these leases was from the date thereof until April 6, 1949, and as long thereafter as oil or gas or either of them was produced. They did not require payment of rentals.

On February 12, 1949, no oil or gas having been produced from the land, plaintiff took from the owners of each tract oil and gas mining leases running for a term of 10 years from date, covering "all that interest reverting to the undersigned lessor by reason of the expiration and termination of that certain mineral deed" given by the owner, naming him, to Home Royalty Association of Oklahoma, "which said undivided one-half interest reverts to the undersigned on April 6, 1949."

Plaintiff contends that by the leases last above referred to, he became and is vested with a valid and subsisting leasehold estate upon an undivided one-half of the oil, gas, and other minerals under each of the two tracts involved. Superior Oil Company contends that upon the expiration of the interest of Home Royalty Association the ten-year leases taken by Wilkoff from the owners of the respective tracts vested it with the leasehold rights on the interests theretofore owned by Home Royalty Association by virtue of the operation of the "after acquired title" doctrine, citing Holleman v. Cushing, 84 Okla. 156, 202 P. 1029; Yamie v. Willmott, 184 Okla. 382, 88 P. 2d 325, and other cases.

Superior Oil Company also points out that each of the leases taken by Wilkoff covered the entire tracts and not merely the fractional interests remaining in the owners after the conveyances of the mineral interests to Home Royalty Association, and asserts that, therefore, when the interests of Home Royalty Association expired, by operation of law its leases extended to and embraced such interests. It calls attention to the fact that each of its leases expressly warranted the title of the owners to the tract therein described; provided that the covenants thereof should extend to assignees, and authorized assignments thereof in whole or in part; that the assignments to it assigned not only the leases themselves, but all rights incident thereto, citing Prairie Oil & Gas Co. v. Jordan, 151 Okla. 147, 3 P. 2d 170, 79 A.L.R. 492, in which we held that similar provisions in leases and assignments transferred the right to maintain an action on the covenant of warranty from the original lessee to the assignee of such lease.

As we view the case, it is unnecessary to determine the applicability of

the after-acquired title rule. In the instant case, at the time the leases to Wilkoff were made by the land-owner, the landowners could not make leases on the undivided one-half interest covered by the term mineral conveyance which would vest in the lessees any present rights in the oil and gas under such one-half interest. However, the leases here involved containing covenants of warranty, and it being provided by 16 O.S. 1941 § 19, that "a warranty deed made in substantial compliance with the provisions of this chapter shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described," it becomes necessary to determine whether the reversion of the mineral interest covered by the 21-year term mineral deed was such an interest in the land as was covered by the lease.

In Kassner v. Alexander Drug Co., 194 Okla. 36, 147 P. 2d 979, we pointed out that the distinction between deeds on conditions subsequent and deeds on conditional limitation were abolished under our statutes; that all future interests were either reversions or remainders, and every contingent remainder was deemed to be a conditional limitation and was alienable. Here the lessor had an interest in the minerals covered by the term royalty and such interest was alienable. He made an oil and gas lease which by its terms included the entire mineral interest and for a term of years extending beyond the effective term of the term royalty, unless the term royalty conveyance was extended in time by production.

In Kassner v. Alexander Drug Co., supra, the question was whether a deed which in plain and unambiguous language conveyed to the grantee all of two lots, except a portion which was occupied by a railway company under a deed providing that upon abandonment the portion so occupied should revert to the grantor, vested in the grantee the reversionary interest of the grantor in the portion occupied by the railway company. We held that such subsequent conveyance vested in the grantee the right of the grantor to such reversion or remainder, so that upon the abandonment of the railway right of way by the railway, the land occupied by it vested in the grantee in the subsequent deed. In that case we held that it could not be shown by parol evidence that the grantor of the subsequent deed did not intend to convey the right of reversion in the disputed strip. In disposing of this contention, we said:

"The deed, not being ambiguous, governs and controls as to the intention, as we held in the Jennings Case. (Jennings v. Amerada Petroleum Corp., 179 Okla. 561, 66 P. 2d 1069). There is nothing whatever in this deed to satisfy the rule that the deed must clearly express a reservation in the grantor of the right of reversion or it will be deemed to have passed with the conveyance."

The rule or principle announced in Kassner v. Alexander Drug Co., supra, was followed and expressly approved in Fuhr v. Oklahoma City, 194 Okla. 482, 153 P. 2d 115, in which we stated that 60 O. S. 1941 §§29, 30, and 40, abrogated the common-law rule, and that thereby all future interests were either reversions or remainders and were alienable.

The general rule is that where an intent to convey the entire interest of the grantor is clear from the whole deed, the instrument will be construed to effectuate such intent. 26 C.J.S. p. 380, §104. In the same section, on page 381, it is said:

"So there is a presumption that a grantor intends to convey his entire interest, and a deed will be taken to convey the entire property and interest of the grantor in the premises unless something appears to limit it to a lesser interest."

In 16 Am. Jur. p. 533, §169, referring to intention, the author says:

684

"In accordance with the principle that plain and unambiguous language in a deed is not susceptible of construction to ascertain an intention, the rule is well settled that any secret, subjective, or unexpressed intention or purpose is absolutely of no avail or importance in the construction of deeds. While all clauses and words in a deed will be considered in construing it, the question is not what the parties meant to say, but the meaning of what they did say."

While the cases of Kassner v. Alexander Drug Co., supra, and Fuhr v. Oklahoma City, supra, involved deeds, the same rule is applicable to oil and gas mining leases containing a warranty of title, where the lease is assigned by an assignment which assigns all the rights of the original lessee incident thereto. Prairie Oil & Gas Co. v. Jordan, supra. The recitals of the leases and assignments in the instant case were similar to those involved in Prairie Oil & Gas Co. v. Jordan, supra. It therefore follows that the rule announced in these decisions applies with equal force in the instant case, and that by the leases to Wilkoff and the assignments to Superior, Superior became, to the extent of the rights granted in its leases, vested with all the interests of the landowners in the oil and gas covered by the term mineral deeds, and when those deeds expired by their own terms the oil and gas mining rights in said one-half mineral interests reverted to and vested in Superior Oil Company, and said mineral interests became subject to the terms of its oil and gas lease. This was the holding of the trial court and its judgment was correct.

Affirmed.