RLM PETROLEUM CORPORATION; The Estate of Robert M. Barber, Deceased; Robert K. Black, Trustee; Marvin Cassell; Richard A. Cohn; Robert Edlis; Raymond Friedlander; Ed Goldman; Bernard McGowan d/b/a McGowan Investment Company; Mid–States Pipe and Supply Co.; Royal Miller, Trustee; Northwest Energy Enterprises, Inc.; Oklahoma Electrical Supply Company; Erlene Silver; Murray N. Silverstein; Albert Skalovsky; Irvin Steinhorn; Junia S. Cassell; W.C. McCurdy, III; Gary Scott McCurdy; and Gail Ann Hurley, Appellants,

v.

Richard EMMERICH and Victor Emmerich, Appellees.

No. 78000.

Supreme Court of Oklahoma.

May 23, 1995.

Karl F. Hirsch, Lisa Tipping Davis, Musser & Bunch, Oklahoma City, for appellants.

Harold Logsdon, Baker, Logsdon, Schulte & Cross, Kingfisher, for appellees.

SIMMS, Justice.

This is an appeal from a declaratory judgment action instituted by the appellants, RLM Petroleum Corporation (RLM) and others all of which have an interest in an oil and gas leasehold estate (Leaseholders). RLM is the operator of a well that has been producing on the leasehold for several years. The Leaseholders asserted their leasehold estate did not terminate upon the expiration of a 25 year term mineral interest held by the original lessors of the oil and gas lease. The trial court determined the leasehold did terminate, and the Court of Appeals affirmed.

■ Certiorari was granted to consider the first impression question of whether an oil and gas lease entered into by owners of a term mineral interest terminates upon the expiration of that mineral interest's fixed term. We find that absent language in the deed expressly authorizing the term mineral interest holder the right to encumber both the term mineral interest and the complimentary future interest with an oil and gas lease, the lease granted by the term mineral interest holder terminates upon the expiration of the definite term mineral interest. The opinion of the Court of Appeals is vacated, and the judgment of the district court is affirmed. The undisputed facts follow.

On January 10, 1966, H.D. and Ida Mosier (the Mosiers) conveyed property to appellees herein, Victor and Richard Emmerich (the Emmerichs), reserving a twenty-five year mineral interest. The mineral interest reservation provided:

"All Mineral Rights are hereby reserved for a period of Twenty–Five years from this date. At end of Said time All Mineral Rights Return to record owner. Right of leasing Mineral Rights and right of Egress for development of any minerals."

In 1979, the Mosiers' successor to the term mineral interest, Robert T. Rice, executed an oil and gas lease in favor of Classen Oil and Gas Company which covered the subject property. A well was drilled on the property that same year, and it has continued to produce oil and gas in commercial quantities since completion. The Leaseholders suc-

ceeded to all of the interest of Classen Oil and Gas Company under the lease and are the owners of the leasehold interest covering the mineral interest underlying the property. On January 10, 1991, the 25 year term mineral interest reserved by the Mosiers expired. The Emmerichs claimed to be the record owners of the property on the date of the mineral interest's expiration.

The Leaseholders brought this declaratory judgment action requesting the trial court to declare the oil and gas lease to be in full force and effect and the Emmerichs to have no right, title or interest in the leasehold estate other than the royalty interest they are entitled to as successors to the lessor.[1] The Leaseholders then filed a motion for summary judgment on the claim for declaratory relief. The Emmerichs countered, and the trial court granted summary judgment in favor of the Emmerichs.

There is no question that the interest in the minerals held by the Mosiers and their successor was a fixed term interest which automatically expired at the end of the twenty-five year period. *Hurst v. Byars*, 298 P.2d 407 (Okla.1956); 2 H. Williams & C. Meyers, *Oil & Gas Law* § 332 (1995); 1 E. Kuntz, *Oil and Gas* §§ 9.4, 15.8 (1987). All rights to the minerals held by the Mosiers' successor terminated on January 10, 1991. The only question before us is whether the oil and gas lease entered into by the Mosiers' successor continued to be viable after the term mineral interest terminated.

■ Generally, the "owner of a term for years cannot create an interest in land to endure beyond the term." 2 H. Williams & C. Meyers, *Oil and Gas Law* § 332, at p. 118 (1995). *See also* 2 Powell, *The Law of Real Property* ¶ 203[3] (1993) (expressing this rule in regards to estates for life). It follows that the owner of a mineral interest terminable upon a certain date can grant an oil and gas lease, but that lease is not capable of enduring beyond the term of the grantor's estate. 1 E. Kuntz, *Oil and Gas* §§ 9.4, 20.3, 20.5 (1989); 2 H. Williams & C. Meyers, *Oil and Gas Law* § 332 (1995); *Hillis v. Dils*, 53

Ind.App. 576, 100 N.E. 1047 (1913) (owner of determinable fee may not convey more than determinable fee). Likewise, the holder of a remainder interest may not make an oil and gas lease effective to permit immediate exploration and production of oil and gas without the consent of the holder of an estate for a term of years. *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 40 P.2d 463 (1935). Rather, the oil and gas lease covering a remainder interest will become effective when that interest vests in present possession and enjoyment at the end of the life estate or estate for years. *Greenshields v. Superior Oil Co.*, 204 Okla. 681, 233 P.2d 959 (1951); 1 E. Kuntz, *The Law of Oil and Gas* § 7.1 (1987).

■ Despite the black letter law prohibiting the holder of a present interest in real property which is limited in duration from creating an estate which will extend beyond the term of the present interest, the Leaseholders assert their oil and gas lease continues even though the term mineral interest expired. The Leaseholders assert the holdings of two Oklahoma cases, *Peppers Ref. Co. v. Barkett*, 208 Okla. 367, 256 P.2d 443 (1953), and *Ludwig v. William K. Warren Found.*, 809 P.2d 660 (Okla.1990), require the lease to continue after the term mineral interest expires. However, neither of these cases hold such. Rather, the Leaseholders have misconstrued the holdings of both cases.

In *Barkett*, grantors conveyed a one-half mineral interest to grantees for a period of 25 years with the mineral interest reverting back to grantors at the end of that period. During the 25–year period, the grantees executed an oil and gas lease to Peppers Refining Company for a primary term of five years and as long thereafter as oil or gas is produced. At the end of the 25–year period, oil was being produced by a well drilled on the leasehold.

The grantees brought a quiet title action against the grantors and the lessee claiming that because the lease was entered during the 25–year mineral interest period, they were entitled to royalties on the oil produced

---

1. Other causes of action were alleged besides the one for declaratory relief, but the declaratory action is the only one before us on appeal of the trial court's grant of partial summary judgment to the Emmerichs.

until the lease terminated by cessation of production. The grantors argued the grantee's interest in the minerals and royalties expired at the end of the 25–year period. In resolving the dispute, this Court paid careful attention to the express provisions of the mineral interest conveyance which provided:

"An undivided 1/2 interest in all of the oil, gas, coal and the other minerals now, or at any time hereafter, lying in or under the following described tract of land (or any part thereof,) situated in [legal description of property]

\*    \*    \*    \*    \*    \*

"To Have and to Hold, All the aforegranted estate, property and easements, together with all and singular the rights, privileges and hereditaments thereunder belonging or appertaining unto the said F.H. Barkett and George Carum, their heirs, successors, and assigns, *for a term and period of 25 years from the date hereof at which time the estate, right and interest of the second parties in the minerals, lands and premises aforesaid shall cease.*

\*    \*    \*    \*    \*    \*

"And it is hereby expressly declared that it is the true intent and purpose of this conveyance to pass to and vest in the said F.H. Barkett and George Carum an undivided 1/2 interest in all the mineral and mineral rights in the land first described herein, or that at any time may be found therein or thereunder, and all grantor's rights to operate for said minerals, and deal and contract with regard thereto, *for the full term and period of 25 years and no longer from the date hereof* including the leasing thereof, as fully to all intents and purposes as if the said grantees were the joint owners of the entire title and estate in said lands." 256 P.2d at 444–45 (Emphasis in original to denote language typewritten into printed form).

The Court construed this language to grant to the grantees a mineral interest including "all grantor's rights to operate for said minerals" and the right to "deal and contract with regard thereto". The Court held:

"Only one conclusion can be reached in interpreting this language. The mineral interest was conveyed to plaintiffs for the term of 25 years only, but any leases executed within that period did not expire at the same time. They continued in force subject only to the reversion of the royalty or mineral interest to the defendants herein. It is no different from the situation which would have obtained had defendants conveyed the minerals outright to plaintiffs with the provision that they would, at the end of 25 years be reconveyed, subject to the rights of lessees, under the terms of existing leases. As to plaintiffs, at the end of said period, their interest and estates in the lands and their rights under the leases ceased. The *rights of lessors to the benefits flowing from an oil and gas lease are not personal but inure to the owner of the minerals* or of the royalty interest in those minerals if such royalty interest has been carved out of, and alienated from, the mineral estate. In the instant case that had not been done. The minerals had been conveyed. Twenty-five years later, they reverted burdened only by the outstanding leasehold estate." 256 P.2d at 446 (Emphasis added).

Thus, based upon the language of the conveyance, the *Barkett* Court determined the parties intended for the grantees to have the right to enter into an oil and gas lease covering the minerals in the mineral estate and that the *rights under that lease would revert* to the grantors at the end of the 25–year mineral interest period. In other words, the grantors expressly conveyed *all* of their rights to the minerals to the grantees for 25 years retaining no control over what the grantees did with the property. At the end of the 25–year period, the interest to the minerals reverted back to the grantors subject to the valid lease executed by the grantees. As the Court stated, the grantees had the right to encumber the property with a lease and it was as if they reconveyed the interest subject to that lease back to the grantors. In fact, no argument was advanced in regards to the continuation of the lease. Rather, the parties desired the lease to continue, and the controversy centered

upon who was entitled to the benefits of the lease.

The holding in *Barkett* has come under attack from commentators on the grounds that it does not follow sound principles of property law. *See* Mosburg, "Oil and Gas and the Defeasible Fee," 12 Okla.L.Rev. 233 (May, 1959); Tinney, "Issues and Problems Encountered When Granting or Leasing Term Mineral Interests," 57 Okla.B.J. 2307 (September 27, 1986). However, this criticism is based upon an erroneous understanding of the Court's rationale in *Barkett*. *Barkett* did not turn property law on its head and hold that expiration of a term mineral interest has no effect on leases granted by the owner of the term mineral interest. Rather, *Barkett* stands for the proposition that a grantor of a term mineral interest who reserves a future interest may agree by express language in the conveyance to allow the future interest to be subject to an oil and gas lease granted by the term mineral interest holder (grantee) during the term of the mineral interest.

Professor Kuntz accurately analyzed the rationale of the Court in *Barkett* when he wrote:

"The owner of a fee simple defeasible has the right to extract oil and gas, except that he or she may be enjoined from committing equitable waste. It follows that such an owner has the power to grant a valid oil and gas lease which would terminate upon the termination of the lessor's estate. *It is possible that the language of the instrument creating the lessor's estate may indicate an intention to give the owner of such interest the power to grant a lease which will also be binding upon the future interest.*" 2 E. Kuntz, *The Law of Oil and Gas* § 20.3, at pp. 122–23 (1989) (Citations omitted) (Emphasis added to portion specifically discussing and citing *Barkett* ).

Professor Kuntz further concluded:

"It is possible to create an interest in the minerals alone which is terminable upon the expiration of a definite period of time. It is difficult to classify such an interest in terms of conventional property law, but it is obviously a greater interest than an estate for years. It is either an estate for years without impeachment for waste, an estate for years to which the open mine doctrine applies, or is a fee, from the standpoint of enjoyment, which is terminable upon a certain date. *The owner of such an interest has a right to extract and retain minerals produced and undoubtedly can confer the right upon another by an oil and gas lease. Such a lease would not ordinarily be capable of enduring beyond the term of the grantor's estate,* but if he is specifically given the power to lease, any lease granted should be capable of enduring beyond the specified term of years. Obviously, caution would dictate that a lessee secure a lease from the owner of the complementary future interest as well as from the owner of the estate in present possession and enjoyment, or require that they join in a lease." 2 E. Kuntz, *The Law of Oil and Gas* § 20.5, at p. 128 (1989) (Citations omitted) (Emphasis added). *See also* 1 E. Kuntz, *The Law of Oil and Gas* § 9.4, at p. 255 (1987) ("It is possible to create an interest in the minerals which is terminable upon the expiration of a definite period of time. In such instance, upon the expiration of the definite period of time, all rights in the minerals and in leases granted prior to the expiration of the term mineral or royalty interest cease and terminate", citing *Barkett*.)

Therefore, in *Barkett*, at the expiration of the 25–year period, the grantees' *rights* in the minerals and royalties under the lease ceased along with their term mineral interest. Yet, due to express language in the conveyance, the lease remained viable. Such is not the case in the conveyance to the Emmerichs.

■ In the case at bar, the Mosiers/grantors conveyed the property to the Emmerichs/grantees and reserved a 25 year mineral interest. The deed expressly provides that at the end of the 25–year period, *all* mineral rights including *the right of leasing mineral rights* and the right of egress for development of the minerals will return to the record owner. There is no indication that the Emmerichs agreed to be subject to any leases entered by the term mineral inter-

est holder. A party asserting a limitation upon an estate conveyed has the burden of proving such limitation. *St. Louis–San Francisco Ry. Co. v. Humphrey,* 446 P.2d 271 (Okla.1968). The Leaseholders have failed to show any language of conveyance similar to the language in *Barkett,* and *Barkett* does not control this case.

Rather, the language of the instant conveyance indicates the term mineral interest held by the Mosiers' successor and the complementary future interest held by the Emmerichs were separate and distinct estates. *First Nat'l Bank of Amarillo v. Amarillo Nat'l Bank,* 531 S.W.2d 905 (Tex.Civ.App. 1975). Each interest holder could enter into an oil and gas lease covering his interest as we concluded in *Greenshields v. Superior Oil Co.,* 204 Okla. 681, 233 P.2d 959 (1951). *See also* 1 E. Kuntz, *The Law of Oil and Gas* § 7.1, at p. 206 (1987) (citing *Greenshields* ).

In *Greenshields,* we held that the holder of a reversionary interest may grant a lease covering the reversionary interest which is valid as to all of the lessor's interest even where that lease is executed *prior to the interest reverting* to the lessor. The owners of two tracts of land conveyed a one-half mineral interest to Home Royalty for 21 years and as long thereafter as oil, gas or other minerals were produced. During the 16th year of the 21–year term Superior Oil acquired oil and gas leases from both the grantors and the grantees of the term mineral interest, Home Realty. Two months before the expiration date of the term mineral interest, Greenshields acquired oil and gas leases from the grantors which covered the property and *specifically included the reversionary interest.* At the end of the term, neither oil nor gas were produced, and the term mineral interest expired.

Greenshields brought an action claiming Superior Oil's leases did not cover the reversionary interest of the grantors. The Court held that when the grantors gave the oil and gas lease to Superior Oil, they conveyed all the rights they had in the interest, *even those rights that had not vested in present possession and enjoyment at that time.* Therefore, when the term mineral interest expired after 21 years, Superior Oil had a valid lease cov-ering the reversionary interest of the grantors and Greenshields did not. The significance of this decision is that the Court recognized Superior Oil's lease as valid not because Superior Oil had taken it from the term mineral interest holder, Home Realty, but because Superior Oil had acquired a lease from the reversionary interest holders which covered that reversionary interest before it had even vested in present possession and enjoyment.

In applying the principle to the case at bar, we find the Mosiers' successor entered into an oil and gas lease covering all of their rights in the minerals, i.e. the right to lease during the 25–year term of the mineral interest. In order to acquire a lease covering the complementary future interest held by the Emmerichs, the Leaseholders would have needed to obtain a lease from the Emmerichs. Absent language in the conveyance ·granting the term mineral interest owner the right to encumber the complementary future interest with a lease as was the case in *Barkett,* the Mosiers' successor did not have the authority to make the Emmerichs' interest subject to the lease after the term mineral interest expired.

Leaseholders also point to language in *Ludwig v. William K. Warren Found.,* 809 P.2d 660 (Okla.1990), for support of their position. The sole issue in Ludwig was:

> "whether a defeasible term mineral interest (*as distinguished from a lease* ) for a term of twenty years and as long thereafter as oil and/or gas or other minerals are produced from the land, expires when the only producing well on the property ceases production after the twenty-year period set forth in the mineral deed and a new well is drilled and production thereafter re-established." 809 P.2d at 661 (Emphasis added).

In answering the question affirmatively, the Court identified the term mineral interest as an "estate determinable upon a conditional limitation." In other words, the term mineral interest was capable of continuing indefinitely. The conditional limitation was that oil and gas or other minerals must be produced to perpetuate the estate. The Court then concluded the grantors bargained

and sold the term mineral interest presumedly for less compensation than they would have for a fee interest in the minerals, the remaining compensation being the right to enforce their reversionary interest in the minerals. Thus, the holders of the defeasible term mineral interest did not receive a fee interest and did not suffer a forfeiture when the conditional limitation terminated due to cessation of production of oil or gas.

In further commenting on the inapplicability of forfeiture analysis, the Court went on to note how the parties to a lease differ from the parties to a conveyance of a defeasible term mineral interest and followed by stating:

> "Cancellation of a term mineral interest does not affect the lessee's right to produce. From the lessee's position the only change is the name of the payee on the royalty checks."

This statement assumed the lessees had a valid lease which covered the reversionary interest as well as the term mineral interest. The above-quoted language was not intended as a statement of law that a lease granted by a term mineral interest owner will necessarily continue after the term mineral interest expires so as to cover the reversionary interest in the minerals as well. *Ludwig* does not support the Leaseholders' claim to a continuing leasehold.

The Leaseholders' final assertion is their lease should not be forfeited because Oklahoma has a strong policy against forfeiture of estates, citing *Stewart v. Amerada Hess Corp.*, 604 P.2d 854 (Okla.1979) and 23 O.S. 1991, § 2,[2]. We are urged to "avoid the effect of forfeiture by giving due consideration to compelling equitable circumstances." *Stewart*, 604 P.2d at 858. We first note that in *Ludwig, supra,* we held that the forfeiture analysis of *Stewart* and 23 O.S.1991, § 2 does not apply in cases of term mineral interests.

However, we also note the Leaseholders have not forfeited anything to which they are entitled. The Leaseholders contracted with

the owner of the term mineral interest to produce oil and gas. During the term of the mineral interest, the Leaseholders have produced oil pursuant to their rights under the lease. Now that the term mineral interest has expired, those persons who were entitled to grant leasing rights to the Leaseholders no longer have the right to lease; the "Right of leasing Mineral Rights" now rests with the Emmerichs. Therefore, the Leaseholders are not forfeiting anything. They received all that they were entitled to receive under the lease with the term mineral interest holders. In order to have a continuing leasehold interest in the subject property, the Leaseholders should have secured a lease from the Emmerichs. 2 E. Kuntz, *The Law of Oil and Gas* § 20.5 (1989).

For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED, and the judgment of the district court is AFFIRMED.

**ALL THE JUSTICES CONCUR.**

---

2. Title 23 O.S.1991, § 2 provides:

"Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful or fraudulent breach of duty."